IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FAES & COMPANY (LONDON) LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>BLOCKWARE SOLUTIONS, LLC,<br><br>    Defendant. | Case No. 22-cv-7121<br><br>Jury Trial Demanded |

## **COMPLAINT**

Plaintiffs Faes & Company (London) Limited ("Faes"), by and through its

attorneys, for its Complaint against defendant Blockware Solutions, LLC

("Blockware"), alleges as follows:

1.      This is an action for breach of contract, negligence, deceptive trade

practices, and fraud concerning an arrangement for the purchase of bitcoin miners

and related hosting services between Faes & Company (London) and Blockware

Solutions. Pursuant to an initial Services Agreement, Blockware sold Faes 50

bitcoin miners for $525,000. Exhibit A, Services Agreement dated October 25,

2021. As part of the broader transaction between the parties, Blockware agreed to

1

host Faes' miners at one the server facilities it allegedly owned and operated in exchange for monthly hosting and energy fees.

2. At the time of the Agreement, however, Blockware did not actually own or operate a facility to host the miners and was not capable of doing so reliably. Further, to the extent Blockware had access to third-party facilities to host and manage the miners, the facilities lacked reliable power (likely due to a limiting contractual arrangement with their energy supplier), so the operation of the miners was and is regularly subject to interruption or "curtailment." As a result, Faes' miners under Blockware's management and control have experienced prolonged downtime and inoperability due to lack of power, resulting in significant loss of revenue.

## JURISDICTION

3. This court has diversity jurisdiction over the subject matter of counts one, two, and four under 28 U.S.C. § 1332(a), in that this is a civil action between a corporation based in the United Kingdom and a corporation headquartered in Illinois, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This court has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

2

5.      Personal jurisdiction over defendant Blockware is proper in this District because the parties' Services Agreement designates the state or federal courts sitting in Cook County, Illinois as the jurisdiction for any action or dispute relating to the Agreement, and, on information and belief, Blockware has its principal place of business in Chicago, Illinois.

## VENUE

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) because, on information and belief, Blockware's principal place of business is within this District and the parties' Services Agreement designates the state or federal courts sitting in Cook County, Illinois as the venue for any action or dispute relating to the Agreement.

## PARTIES

7.      Plaintiff Faes & Company (London) Limited is a limited company registered in London, United Kingdom.

8.      Upon information and belief, Blockware Solutions, LLC is a limited liability company formed under the laws of Delaware with its principal place of business in Chicago, Illinois.

## BACKGROUND OF THE ACTION

9.       Plaintiff Faes is a corporation engaged, among other things, in the business of bitcoin "mining." Bitcoin mining is the process of applying computing

3

power to solving complex cryptographic problems to produce or "mint" new bitcoins, which are assigned to the solver or its "mining pool."

10.     Computer systems for bitcoin mining are purpose-built to efficiently solve cryptographic problems. They are sometimes referred to as Application Specific Integrated Circuit (ASIC) miners, as they are designed for the specific application of bitcoin mining. A typical bitcoin mining system retails for around $5,000 to $10,000, depending on the specific architecture and components. A photograph of a Bitmain bitcoin mining system offered by defendant Blockware is shown below.



Fig. 1. Bitmain Bitcoin Miner

11.     Defendant Blockware is a corporation engaged in the sale and management of systems for bitcoin mining. On information and belief, Blockware's primary business is the management of its customers' mining systems

4

at its own or third-party data centers. That is, customers purchase mining systems through Blockware, which then procures the miners, installs them, and oversees their operation at data centers in the United States. According to its website, "We host our clients at Blockware's hosting facilities [sic] WV, PA, and KY." www.blockwaresolutions.com/hosting-colocation-services.

12. Because bitcoin mining is energy intensive, mining systems are typically located in places with low energy cost, such as regions with excess hydroelectric power. Whether bitcoin mining is profitable depends ultimately on various costs, particularly the price of energy, hosting fees, and the price of bitcoin on the open market.

13. Blockware not only procures bitcoin miners for its customers, it also serves as the manager and custodian of its customers' bitcoin mining systems. Blockware bundles the mining systems it sells with "hosting plans," which include installation, management, and energy fees for the miners at a fixed monthly rate, typically for a term of one year or more. Such plans allow for customer confidence regarding the economic variables pertinent to bitcoin mining, though they can represent a risk for Blockware if the price of energy rises (or a risk for Blockware's customers if the price of energy declines.) Customers are willing to pay a premium to for bitcoin miners with "hosting" plans, because it ensures the miners will be operational and mining bitcoins shortly after they are received.

5

14. Faes first became interested in purchasing and hosting bitcoin miners with Blockware as a result of Blockware's marketing activities and commitments. For example, on June 16, 2022 Blockware sent Faes an email advertisement promising that:

> We offer <u>exceptional, turnkey miner hosting services</u> within the safety and security of the US. <u>Our all-in rates undercut the market by 15-20%</u>. We'll help you generate material savings each month by locking in <u>below market rates</u> with <u>industry leading uptime</u> and security for your rigs.

Exhibit B, June 16, 2022 email from Blockware to Faes at p. 4 (emphasis added). As discussed below, Faes was induced to purchase $525,000 in bitcoin miners and related hosting services from Blockware based on these and other misrepresentations.

## THE CONTRACT

15. Blockware Solutions differentiates itself from other bitcoin mining hosting services, such as Compass Mining, by claiming that it owns and operates its own data centers. As Mason Jappa, CEO of Blockware, noted to Faes during discussion of a potential half-million-dollar purchase of miners and associated hosting, "I am confident that we can beat [Compass Mining's] quotes in bulk, and offer better services - as they rely on third parties for hosting and <u>we have our own hosting facilities</u>. We are also fully vertically integrated with our own pool and miner management software." Exhibit C at 2, October 14, 2021 06:31 email from

Mason Jappa to Christian Faes (emphasis added). Mr. Jappa further noted that, "I can have you online in December, and sell you 150 x S19j Pro 100T November batch for $9950 landed cost each with a 6.8c kWh hosting rate. This is a real quote, not a fantasy land :)" *Id*. at p. 3.

16.      After further discussion, four days later Mr. Faes wrote to express interest in purchasing 50 miners and to clarify certain terms of the arrangement, such as the cost and that the miners would be "*new*". Ex. C at p. 5, October 18, 2021 email from Christian Faes to Mason Jappa (emphasis original). After some additional discussion regarding cost and delivery date, Mr. Faes agreed to purchase 50 Antminer S19j Pro 100 TH's for "$10,500/machine all in." *Id*. at 7, October 19, 2021 email from Christian Faes to Mason Jappa. The following day Blockware sent Faes an invoice for $525,000 for the miners, which was timely paid.

17.      In association with the purchase of the 50 miners, Faes signed a "Services Agreement" on October 25, 2021. Exhibit A, Services Agreement. Importantly, the Services Agreement is for the purchase and delivery of the specified miners, but it is not a contract for hosting services. The Agreement states, "After Client has remitted payment to Blockware for the full amount of the Invoice, Blockware will arrange for the purchase and delivery of the specified computer system(s) on behalf of Client at the soonest opportunity." *Id*. at sec. 1. And further, "This Agreement… will continue in effect through the earlier of (A)

the completion of the Services described in paragraph 1 above [purchase and delivery of the miners by Blockware] or (B) the termination of this Agreement as expressly provided for in this Agreement." *Id*. at sec. 3(a) (emphasis added).

18.     Mr. Jappa of Blockware had earlier emailed Mr. Faes a separate "Colocation Facilities Services Agreement" for review, but Mr. Faes objected to its terms and never signed or otherwise adopted this Agreement. Ex. C at p. 5-6. Thus, "hosting agreement" agreed to between the parties is that agreement manifested in the parties' communications, Blockware's representations, and the reasonable and good faith performance implied by law. Faes' breach of contract claim is based on Blockwares' failure to provide hosting services consistent with its representations and the parties' negotiated arrangement.

## BLOCKWARE'S MISREPRESENTIONS AND BREACHES

19.     For each miner and hosting plan it sells, Blockware is accepting an agency relationship on behalf of its customers with related obligations, including diligent and faithful services. Blockware procures the miners, takes custody of them, installs them at a data center, and oversees their management and operation on behalf of the customer, which derives revenue from their operation. Based on its representations that it has the ability to safely and competently manage bitcoin mining systems at its own facilities for predictable fees, Blockware sells customers hundreds of thousands of dollars worth of computer hardware and services.

20.    One of the most significant concerns for mining bitcoin is "uptime,"
the amount of time miners are actually operational and performing their intended
task, mining bitcoin. Bitcoin mining hardware is designed for extended uptime,
and it is not atypical for miners to operate for months with no downtime. At a
minimum, new miners hosted in a professional facility should have at least 95%
uptime. According to Blockware's Website, "**WE OFFER: Timely setup of
machines, Reliable internet and power, Industry-leading up-times**." Exhibit D,
www.blockwaresolutions.com/hosting-colocation-services. Blockware has
specifically breached each of these "OFFERS" with respect to Faes.

21.    Faes ordered its miners from Blockware, expressly stating that, "I will
go for the January delivery." Exhibit C at 7. Blockware accepted this offer and
Faes' $525,000 payment in October 2021. However, it was not until April 15, 2022
that Faes' miners actually went online. Even accounting for potentially
"reasonable" delays, Faes' lost at least a month and a half of uptime due to
Blockware's failure to abide by its commitment to "timely set up" Faes' miners.

22.    More significantly, Blockware has failed to provide reasonable, much
less "Industry-leading," uptime for Faes' miners. As of October 2022, the average
uptime for Faes' miners at Blockware's facility was less than 70%, and the miners
have largely been offline during November 2022. If the relevant date is taken to be

9

January 1, 2022 instead of April 15, 2022 (when the miners actually went online), their uptime is less than 50%.

23.    Problems with downtime began approximately two days after Faes' miners first came online and have persisted throughout 2022, resulting in numerous complaints and support tickets by Faes. Despite these problems, Blockware hosts and updates a public "status page" that shows persistent high uptime at its facilities, including the Pennsylvania facility where Faes' miners have been hosted, showing consistent 100% uptime for the preceding 90 days. Exhibit E, "Status Page" at www.blockwaresolutions.statuspage.io.

24. Despite the displayed "100% uptime", if one clicks on the "incident history" at the bottom of the "Status Page," one is directed to a page showing approximately 50 days of extended power "curtailment" at the Pennsylvania facility during September and October. Exhibit F, Incident History at www.blockwaresolutions.statuspage.io/history?page=1. In contrast to reports of near perfect uptime, the miners managed and overseen by Blockware at the Pennsylvania facility were often nonoperational due to curtailment of power at the facility.

25.    On information and belief, such "curtailments" are the result of a power contract Blockware or its agent entered into with its energy supplier that limited Blockware's exposure to increased energy costs to the detriment of its

10

customers, including Faes, despite Blockware's commitment to provide reliable power at a fixed rate of $0.068 per kW/h. Blockware's claims that it offers "Reliable internet and power" and that its facilities experience "100% uptime" even when (at least) its Pennsylvania facility has been subject to regular and extended energy curtailment are false and misleading and induced Faes to contract with Blockware to procure and host its miners.

26.     The depth of Faes' frustration with Blockware's failure to deliver on its promises is detailed in a lengthy email exchange from September 27, 2022 to October 18, 2022 with the subject "Really need some action." Among other things, Faes notes:

> Whilst I am meant to have 50 machines hashing with Blockware, I have only been getting at best c.2.5PH [pentahash, a unit of computing power equal to 1000 terahashes] (ie, half what I should be hashing), and most days it's more like 1.5PH. From Blockware Terminal we can see that there are 21 machines that *haven't hashed at all* since the last few weeks of August; and haven't had anywhere near 5PH since mid August.

Exhibit G, September 27 to October 18 emails between Faes and Blockware at p. 1 (emphasis original). On October 13, 2002, after Blockware repeatedly failed to address Faes' concerns, Faes emphasized that:

> We are meant to have 50 machines with Blockware but have now been **months**, with no more than 2.5PH and only for a few hours a day. We have only had 5PH a few weeks, since we ordered the machines a year ago. **This isn't right**.
>
> I have also been asking for serial numbers for about 10 weeks now. This all smells very fishy.

*Id*. at p. 3 (emphasis original).

27.     In fact, since approximately October 20, 2022, all 50 of Faes' miners at Blockware's Pennsylvania facility have been offline without justification or even explanation. Assuming a bitcoin price of $20,000, this represents a continuing loss to Faes of approximately $5,000 per month after deducting expected energy costs and hosting fees. Faes' miners currently remain offline and in Pennsylvania even though the parties have engaged in months of negotiations and discussions to transfer the miners from Blockware's Pennsylvania facility to its data center in Kentucky, which allegedly has access to reliable power.[1]

28.     In addition to failing to manage and oversee Faes' miners so that they can achieve their intended purpose of mining bitcoins, Blockware has unilaterally increased it fees for the energy used to operate the miners. As discussed above, Faes contracted with Blockware for one year to host and manage its miners and provide energy at a fixed cost of $0.068 kW/h. However, as of August 1, 2022, Blockware has raised its energy fees to $0.08 kW/h.

29.     When Faes complained about the rate increase, Warren Rogers, Blockware's CFO, replied that, "We have raised all client charges to 8c with no

---

[1] As of the date of this Complaint, Blockware has apparently agreed to ship the Pennsylvania miners to Faes. Of course, this will result in additional downtime and Faes will have to procure substitute hosting for the machines as a result of Blockware's misrepresentations and contractual breaches, with attendant damages.

exceptions due to the unprecedented cost inflation that we are experiencing. We have the absolute right to do so." Exhibit H, August 3, 2022 email from Rogers to Faes at p. 3. Mr. Rogers further threated that, "If you choose not to comply, you may remove your machines from our hosting facility. If your invoice is not settled within the stated time frame, we reserve the right to point your machines to our account, disconnect, or resell to cover our damages." *Id*. While Blockware had no right to take such actions under the parties' agreement and could not lawfully do so as Faes' agent, Mr. Rogers used the fact that Blockware had physical possession of Faes' property to extort additional payment for Blockware. Blockware thus disavowed the risk it accepted by entering into a fixed energy price contract with Faes. Had the price of energy fallen, Blockware would undoubtedly not have passed along the windfall to Faes or other customers.

30.     When Faes escalated the issue to Blockware's CEO, Mason Jappa, Mr. Jappa replied, "We have enacted force majeure due to the drastic increase in costs and are forced to raise our hosting rates to become above the water on hosting." Exhibit I, August 4, 2022 email from Jappa to Faes at p. 1. While an increases in energy costs may be an unfavorable development for a party that contracts to provide energy at a fixed rate, it does not constitute a force majeure under any standard interpretation of the doctrine.

31. To the extent Faes "agreed" to pay the increased energy fees, this was only done under duress because Blockware had possession of Faes' miners and threatened to disconnect or even sell them if Faes did not accede to Blockware's demands. In any event, the effect of Blockware's unilateral increase in energy prices has been diminished by the fact that Faes' machines at Blockware's facility have been completely nonoperational since October 20, 2022.

32. In addition to, and potentially explanatory of, Blockware's failures to initiate hosting of Faes' miners in a timely manner, to ensure reasonable uptime and consistent power, and to honor their commitment to a fixed energy fee, Blockware has also failed to provide Faes with serial numbers and proof of ownership of its miners. On information and belief, Blockware has failed to provide relevant information regarding Faes' miners because they are not actually new, because Blockware has used Faes' miners to mine part-time for itself or other customers, or because Blockware is otherwise unable to track customer equipment in its possession, custody, and control.

33. Faes initially requested that Blockware provide serial numbers for its miners in early August. Exhibit J, August 3, 2022 email from Faes to Alex Leathead at p.1. It has been almost four months since Faes made this request,

14

following up multiple times, and Blockware has yet to provide the information.[2] While the specific reason for this failure is unknown, it represents a breach of Blockware's duty to faithfully and competently manage and oversee the miners in Faes' interest and appears to reflect subterfuge on the part of Blockware. Among of things, if Faes cannot verify which miners in Blockware's possession it actually owns, it cannot determine whether its "assigned" miners are consistent with the miners it actually purchased, whether any alleged mechanical problems actually concern its miners, and whether its miners are bring properly credited for their contribution to Blockware's "mining pool."

34.     Upon information and belief, Blockware's acts complained of herein are willful and deliberate.

35.     Blockware's acts complained of herein have caused damage to Faes in an amount to be determined at trial, and such damages will continue to increase unless Blockware is enjoined from its wrongful acts.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

36.     Plaintiff hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

---

[2] On December 12, 2022, after receiving a draft of this complaint, Blockware did provide Faes a list of serial numbers. Faes has not yet had an opportunity to assess whether the serial numbers reflect the miners he purchased.

15

37. Faes has duly performed all relevant conditions by paying Blockware over half a million dollars for the procurement, installation, oversight, and management of bitcoin mining systems purchased from Blockware.

38. Blockware is Faes' agent with respect to the operation and management of Faes' bitcoin mining systems.

39. In breach of its representations to and agreements with Faes and its duties as an agent, Blockware has failed to undertake even reasonable efforts to ensure the safe, effective, and continuous operation of Faes' bitcoin mining systems by, among other things, failing to timely procure and set up the miners as agreed, failing to ensure reasonable uptime the miners, failing to ensure consistent power for the miners, failing to actually own and control the facility in which the miners are housed, failing to charge for energy at the agreed-upon price of $0.068 kW/h, and failing to provide Faes with serial numbers for its miners in Blockware's possession, custody, and control.

40. Blockware has concealed and failed to disclose the actual nature of its business, including lack of ownership of its alleged data facility, its inability to ensure consistent uptime, and lack of access to reliable power, such that Faes was induced to contract with Blockware for the management of its bitcoin mining systems under false pretenses and without disclosure of material information.

41. As a result of Blockware's actions, omissions, Blockware has

16

breached its agreement to responsibly manage Faes' bitcoin mining systems.

42.     Through its breach, Blockware has directly caused damage to Faes, including lost revenue from bitcoin mining, lost revenue from excessive downtime of its miners, excess energy fees, and loss of income from the cessation of operation of Faes' miners in an amount to be determined.

## SECOND CAUSE OF ACTION

### (Negligence)

43.     Plaintiff hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

44.     In agreeing to procure and manage Faes' bitcoin mining systems in exchange for payment, Blockware agreed to act at Faes' agent with respect to its bitcoin mining systems. Generally, an agent is a fiduciary, whose obligation of diligent and faithful service is the same as that of a trustee. An agent is required to disclose to the principal all information relevant to the subject matter of the agency.

45.     As Faes' agent, Blockware accepted certain duties with respect to Faes' mining systems, including duties of care, diligence, and skill in performance of its management function.

46.     By failing to use even reasonable efforts to secure and promote the interests of Faes with respect to the bitcoin mining systems within Blockware's

custody and control without adequate justification, and by failing to disclosure relevant information, including its lack of ownership of the mining facility, inability to provide for consistent power, and failure to provide serial numbers for Faes' equipment, Blockware breached at least its duties of care, diligence, skill, and disclosure with respect to Faes.

47.     Through its actions and omissions, Blockware has directly caused damaged to Faes, including lost revenue from bitcoin mining, lost revenue from excessive downtime of its miners, excessive energy fees, and loss of income from the cessation of operation of Faes' miners in an amount to be determined.

## THIRD CAUSE OF ACTION

### (Deceptive Trade Practices, 6 Del. Code § 2531 et seq.)

48.     Plaintiff hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

49.     This is an action for deceptive trade practices under 6 Del. Code § 2531, et seq.

50.     By virtue of the acts complained of herein, defendant has, inter alia, used deceptive representations with respect to goods or services, intentionally advertised goods or services with intent not to sell them as advertised, and represented their services to have characteristics that they do not have. On information and belief, defendants have also represented that the goods it sold are

new when they are used or reconditioned.

51.     Defendant's acts complained of herein constitute deceptive trade practices, which have injured and damaged Faes.

## FOURTH CAUSE OF ACTION

### (Fraud)

52.     Plaintiff Faes hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

53.     As detailed in this Complaint and attached exhibits, Blockware has engaged in fraudulent misrepresentations or concealment regarding: (1) its alleged secure and competent management of its customers' miners in at facilities it owns and controls, including that it provides "industry leading uptime" and "below market rates"; (2) the reliability and consistency of its mining operations; (3) its ownership and control of its alleged Pennsylvania facility; (4) Blockware's inability to procure consistent power for its customer's miners without curtailment; (4) falsely reporting "uptime" regarding miners housed in its alleged Pennsylvania facility when they were in fact subject to curtailment; (5) Blockware's inability to provide serial numbers for Faes' miners, placing a cloud on their ownership; [and] (6) Blockware stating that it would provide energy at a fixed fee while concealing that it did not intend to do so if the energy market became unfavorable.

54.     In reliance of Blockware's false representations and omissions of

material fact, as detailed above and in the body of this Complaint, Faes was induced to purchase and continue hosting over $500,000 dollars worth of bitcoin mining systems with Blockware, to appoint Blockware as its agent, and to entrust Blockware with the operation and management of the miners at Blockware's alleged facility.

55.     As a result of relying on Blockware's false representations, omissions of material fact, and failure to act in customers' best interest, Faes has been damaged in an amount of not less than $250,000.

56.     Faes has also suffered consequential damages, including loss of expected profit from the operation of its miners, time and efforts of agents and employees to investigate and address the matter, interest, legal fees, and other damages. Punitive damages and attorneys' fees are warranted because Blockware's misrepresentations and calculated omissions were willful, wanton, and oppressive.

## PRAYER FOR RELIEF

WHEREFORE, Faes & Company (London) Limited prays for the Court to enter judgment and provide relief as follows:

(a) award Faes damages for Blockware's breach of the Parties' contracts and additional direct and consequential damages in an amount to be proven at trial;

(b) award Faes damages for Blockware's negligence or willful breach of its duty as an agent to responsibly manage Faes' property in an amount to be proven at trial;

(c) award Faes damages in connection with Blockware's deceptive trade practices;

(d) award Faes compensation for Blockware's fraud;

(e) award Faes punitive damages in connection with Blockware's fraud;

(f) award Faes attorneys' fees and treble damages in connection with Blockware's deceptive trade practices pursuant to 6 Del. Code § 2533(b) and (c).

(g) such further and additional relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: December 16, 2022          Respectfully submitted,

By: */s/ Alan E. Engle*
Alan E. Engle
CA Bar No. 224779
(applying for *pro hac vice*)
Meador & Engle
1115 Seal Way
Seal Beach, CA 90740
(310) 428-6985
alan.engle@meenlegal.com

Wesley E. Johnson
(Ill. Bar No. 6225257)
Goodman Tovrov Hardy & Johnson LLC
105 W. Madison, Ste. 1500
Chicago, IL 60602
(312) 752-4828
wjohnson@goodtov.com

Attorneys for Plaintiff
Faes & Company (London) Limited

21