**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

FAES & COMPANY (LONDON) LIMITED,

        Plaintiff,

    v.

BLOCKWARE SOLUTIONS LLC

        Defendant.

Civil Action No. 22-cv-7121

Judge:    Hon. Virginia M. Kendall

**DEFENDANT BLOCKWARE SOLUTIONS LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND .............................................................................................. 2

ARGUMENT ...................................................................................................................... 6

  I.    THE COMPLAINT MUST BE DISMISSED FOR LACK OF FEDERAL SUBJECT
MATTER JURISDICTION. ..............................................................................................6

  II.    CLAIMS ARISING UNDER THE CO-LOCATION SERVICES PROVIDED BY
BLOCKWARE ARE GOVERNED BY AN ARBITRATION PROVISION. ...........................7

  III.    THE COMPLAINT SHOULD BE DISMISSED ON THE MERITS BECAUSE IT
FAILS TO STATE A CLAIM. ............................................................................................9

    A.  Plaintiff Fails to State a Claim for Breach of Contract. .................................. 10

    B.  Plaintiff Fails to State a Claim for Negligence. ............................................. 12

    C.  Plaintiff Fails to State a Claim for Deceptive Trade Practices under Delaware Law......13

    D.  Plaintiff Fails to State a Claim for Fraud. ...................................................... 14

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abry Parterners V, L.P. v. F&W Acquisition LLC*,
891 A.2d 1032 (Del. Ch. 2006)........................................................................10

*Ali v. Vehi-Ship, LLC*,
Case No. 17 CV 02688, 2017 WL 5890876 (N.D. Ill. Nov. 27, 2017) ..................................8

*Anschutz Corp. v. Brown Robin Cap., LLC*,
No. 2019-0710-JRS, 2020 WL 3096744 (Del. Ch. June 11, 2020)........................................10

*Apex Digit., Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009) ........................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................9, 10

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d. 100 (2005) ........................................................................15

*AW Acquisition Corp. v. Southwestern Bell Mobile Sys., LLC*,
No. 04-C-1448, 2005 WL 61466 (N.D. Ill., Jan. 7, 2005)........................................................................10

*Bauer v. Jones*,
978 F.2d 1004 (7th Cir. 1992) ........................................................................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................9, 10

*Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*,
999 F.2d 188 (7th Cir. 1993) ........................................................................6

*Chase Bank USA, N.A. v. Hess*,
No. 08-121-LPS-MPT, 2013 WL 867542 (D. Del. Mar. 7, 2013) ........................................13

*Chrysler Rail Transp. Corp. v. Indiana Hi-Rail Corp.*,
No. 93 C 5140, 1995 WL 221804 (N.D. Ill. Apr. 11, 1995)........................................13

*Collab9, LLC v. En Pointe Techs. Sales, LLC*,
Nos. N16C-12-032 MMJ CCLD, 2019 WL 4454412 (Del. Super. Ct. Sept. 17,
2019) ........................................................................15

*Compass Env't, Inc. v. Palu Kai Servs., LLC*,
379 Ill. App. 3d 549 (1 Dist. 2008)........................................................................9

*Cook v. Winfrey*,
   141 F.3d 322 (7th Cir. 1998) ......................................................................................6

*Enter. Warehousing Sols., Inc. v. Cap. One Servs.*,
   No. 01C 7725, 2002 WL 406976 (N.D. Ill. Mar. 15, 2002) ....................................14

*EZLinks Golf, LLC v. PCMS Datafit, Inc.*,
   No. N16C–07–080 PRW CCLD, 2017 WL 1019730 (Del. Super. Ct. Mar. 13,
   2017) ......................................................................................................................15

*Fenner v. Favorite Brand Int'l*,
   No. 97 C 5906, 1998 WL 249232 (N.D. Ill. May 12, 1998) ....................................14

*Flores v. Strauss Water Ltd.*,
   No. 11141-VCS, 2016 Del. Ch. LEXIS 145 (Del. Ch. Sept. 22, 2016).....................10

*Greenberger v. GEICO Gen. Ins. Co.*,
   631 F.3d 392 (7th Cir. 2011) ....................................................................................15

*Gupta v. Morgan Stanley Smith Barney, LLC*,
   934 F.3d 705 (7th Cir. 2019) ......................................................................................8

*Irgau v. Christiana Care Health Servs.*,
   No. 07C-11-180-JOH, 2008 WL 1724250 (Del. Super. Ct. Apr. 9, 2008)................14

*Johnson v. Orkin, LLC*,
   556 F. App'x 543 (7th Cir. 2014) ...............................................................................8

*Landmark Properties, Inc. v. Architects Int'l-Chi.*,
   172 Ill. App. 3d 379 (1 Dist. 1988)............................................................................8

*Livery Coach Sols., LLC v. Music Express/E., Inc.*,
   245 F. Supp. 3d 639 (D. Del. 2017)...........................................................................13

*Lozano v. United Cont'l Holdings, Inc.*,
   No. 11 C 8258, 2012 WL 4094648 (N.D. Ill. Sept. 17, 2012)..................................11

*Lynch v. Coinmaster USA, Inc.*,
   614 F. Supp. 2d 494 (D. Del. 2009)...........................................................................14

*Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*,
   No. 04C-05-091 CLS, 2005 WL 445710 (Del. Super. Ct. Feb. 23, 2005) ................13

*NCA Invs. Liquidating Tr. v. TD Bank, N.A. (In re Seaboard Hotel Member
   Assocs., LLC)*,
   Nos. 15-12510 (LSS), 2019 Bankr. LEXIS 3632 (Bankr. D. Del. Nov. 25,
   2019) ......................................................................................................................12

*OC Tint Shop, Inc. v. CPFilms, Inc.*,
No. 17-1677-RGA, 2018 WL 4658211 (D. Del. Sept. 27, 2018) ............................... 12, 13, 14

*RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*,
45 A.3d 107 (Del. 2012) ......................................................................................... 10

*Ragan v. AT&T Corp.*,
355 Ill. App. 3d 1143 (5 Dist. 2005) ....................................................................... 9

*Sarissa Cap. Domestic Fund LP v. Innoviva, Inc.*,
No. 2017-0309-JRS, 2017 WL 6209597 (Del. Ch. Dec. 8, 2017) ............................ 9

*Serig v. S. Cook Cnty. Serv. Corp.*,
581 F. Supp. 575 (N.D. Ill. 1984) .......................................................................... 15

*Sipple v. Connections Cmty. Support Programs, Inc.*,
No. N17C-11-290 VLM, 2018 WL 3956477 (Del. Super. Ct. Aug. 15, 2018) ...................... 13

*State Ins. Coverage Off. V. Disabatino Constr. Co.*,
No. N19C-08-080 EMD CCLD, 2022 WL 811167 (Del. Super. Ct. Mar. 17,
2022) ..................................................................................................................... 9

*Tierney v. Vahle*,
304 F.3d 734 (7th Cir. 2002) ................................................................................... 2

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) ................................................................................... 2

*Volodarskiy v. Delta Air Lines, Inc.*,
No. 11 C 00782, 2012 U.S. Dist. LEXIS 154831 (N.D. Ill. Oct. 29, 2012) ........................... 11

*Wilson v. Master's Miracle, Inc.*,
No. 05 C 6590, 2006 WL 163020 (N.D. Ill. Jan. 19, 2006) .................................... 7

*Woodward v. Am. Family Mut. Ins. Co.*,
950 F. Supp. 1382 (N.D. Ill. 1997) ........................................................................ 12

**Statutes**

28 U.S.C. 1332(a) ............................................................................................................ 7

DEL. CODE ANN. tit. 6 § 2-719(1) .................................................................................. 12

DEL. CODE ANN. tit. 6 § 2-719(3) .................................................................................. 12

DEL. CODE ANN. tit. 6 § 2352(a)(7) ............................................................................... 13

DEL. CODE ANN. tit. 6 § 2352(a)(12) ............................................................................. 13

Delaware's Deceptive Trade Practices Act........................................................................13, 14

Federal Arbitration Act (FAA), 9 U.S.C. §§ 3-4 ..............................................................8

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................................10, 15

Fed. R. Civ. P. 12(b)(1)...........................................................................................1, 6, 7

Fed. R. Civ. P. 12(b)(3)......................................................................................1, 7, 8, 9

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 2, 6, 9

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), Defendant Blockware Solutions LLC ("Blockware") respectfully submits this motion to dismiss the complaint (the "Complaint") brought by Faes & Company (London) Limited ("Plaintiff") with prejudice.

## PRELIMINARY STATEMENT

This case arises out of a business relationship between Blockware and Christian Faes ("Faes"), principal of Plaintiff, whereby Blockware facilitated the purchase of bitcoin mining equipment and then provided hosting and services in connection that mining equipment. Following an unprecedented change in market conditions—including the precipitous drop in the price of bitcoin, coupled with the rising costs of the energy necessary to run the cryptocurrency mining equipment—Plaintiff now seeks to hold Blockware responsible for the losses stemming from these market conditions, and other factors outside of Blockware's control, even though Blockware's liability for such damages is expressly disclaimed by the parties' contracts.

As an initial matter, Plaintiff fails to establish that this Court has jurisdiction to hear this matter, as Plaintiff fails to demonstrate that it—Faes & Co (London) Limited—was a party to the relevant agreements, and therefore the Complaint should be dismissed pursuant to Rule 12(b)(1).

In addition, although Plaintiff tries to disclaim the applicability of Blockware's Co-Location Agreement—in an apparent attempt to avoid the unequivocal limitation of liability language contained therein—the parties are nevertheless bound by the terms of that agreement, which makes clear that the subject matter of this dispute is governed by an agreement to arbitrate before the American Arbitration Association ("AAA"). As a result, the Complaint should similarly be dismissed under Rule 12(b)(3).

Finally, Plaintiff's complaint fails to state a claim, and this Court should also dismiss it under Rule 12(b)(6).

## FACTUAL BACKGROUND

Plaintiff is a company engaged in the business of bitcoin mining. Compl. ¶9. Blockware provides services to mining companies, including facilitating the sale of bitcoin miners and also providing hosting services, which include the installation and management of its customers' bitcoin mining equipment. Compl. ¶11. Whether a customer's bitcoin mining is ultimately profitable "depends ultimately on various costs" independent of Blockware's services, "particularly the price of energy . . . and the price of bitcoin on the open market." Compl. ¶12. Plaintiff's principal, Faes, and Blockware began discussions about a potential business relationship in October of 2021, including the terms under which Faes would purchase mining equipment and utilize Blockware as a "Co-Location partner." *See* Compl. Ex. C. On October 15, Blockware circulated a Services Agreement and a Co-Location Facility Services Agreement ("Co-Location Agreement") to govern the relationship to Faes at christian@faes.co. Compl. Ex. C at 19.[1]

The Services Agreement, governed by Delaware law, outlined the terms under which Blockware would facilitate the sale of bitcoin miners to Faes. *See* Compl. Ex. A. The Services Agreement specified that "Blockware makes no warranty or representations with respect to the equipment or software purchased on behalf of Client…. Client acknowledges and agrees that Blockware has no control over when the specified computer system(s) may become available from the relevant manufacturer and understands that Blockware can make no guarantee with respect to a delivery date for the specific computer system(s)." Compl. Ex A at §1. The Services Agreement

---

[1] A true and correct copy of the Co-Location Agreement that was attached to the October 15 correspondence to Faes is attached as Exhibit 1 to the Declaration of Mason Jappa ("Jappa Decl."), filed contemporaneously herewith. Because this agreement is incorporated by reference in the Complaint, this court may consider its contents when evaluating this motion to dismiss. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (holding that the incorporation-by-reference doctrine is meant to keep plaintiffs from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to [their] complaint a document that prove[s] that [their] claim has no merit.").

also included "No Warranty" language, which specified, among other things, that Blockware's services were being provided on an "as is" basis, and that there "are no warranties, representations or conditions of any kind, express or implied, written or oral, arising by statute, operation of law, course of dealing, usage of trade or otherwise with respect to the Services or any other product, documentation or service provided under or in connection with this Agreement." *Id.* at §5. The Services Agreement also included a limitation of liability provision, which stated that customer damages could under no circumstances "exceed the amounts paid by customer to Blockware with respect to the services giving rise to the claim." *Id.* at §6(a). The Services Agreement's "Entire Agreement" provision confirmed that "[t]his Agreement, and the Invoice once delivered, constitutes the entire agreement between the parties and supersedes all agreements, if any, previously entered into by and between Client and Blockware with respect to such matters." *Id.* at §8(b).

Blockware's Co-Location Agreement attached to the October 15 correspondence, in turn, governed the terms under which Blockware would install, maintain, and operate Faes' mining equipment. *See* Jappa Decl. Ex. 1. The Co-Location Agreement included information about the categories of fees for these services, including initial setup fees and monthly service fees. *Id.* at §§3.1, 3.2. The Co-Location Agreement confirmed that the customer grants Blockware a first lien security interest (the "Security Interest") in the customer's mining equipment, in the event of the customer's default on their obligations under the Agreement. *Id.* at §4. The Co-Location Agreement specified that the customer would become part of the "Blockware Pools" by having Blockware host their machines. *Id.* at §7.1. Critically, the Co-Location Agreement also expressly limited Blockware's representations and warranties about its services as follows:

BLOCKWARE MAKES NO WARRANTIES OR GUARANTEES RELATED TO THE AVAILABILITY OF SERVICE OR THE OPERATING TEMPERATURE OF THE

FACILITY. THE SERVICE AND THE FACILITY PROVIDED BY BLOCKWARE IS PROVIDED "AS IS." BLOCKWARE MAY NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE FACILITY IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY, ETC. BLOCKWARE MAKES NO WARRANTY WHATSOEVER, INCLUDING ANY (A) WARRANTY OF MERCHANTABILITY; (B) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; or (C) WARRANTY AGAINST INTERFERENCE. BLOCKWARE DOES NOT WARRANT THAT (A) THE SERVICE SHALL BE AVAILABLE 24/7 OR FREE FROM INTERRUPTIONS; (B) THE SERVICE SHALL MEET CUSTOMER'S REQUIREMENTS; OR (C) THE SERVICE SHALL PROVIDE ANY FUNCTION NOT DESCRIBED IN THIS AGREEMENT.

*Id.* at §10. Under the Co-Location Agreement, the customer also expressly acknowledged that "in some situations Mining Equipment functionality may be unavailable due to factors outside of Blockware's control. This includes, but is not limited to network failures, pool operator failures, denial of service attacks, currency network outages, hacking or malicious attacks on the crypto networks or exchanges, power outages, or acts of God." *Id.* at §11.1. Blockware expressly disclaimed any liability for interruptions or defects in the equipment functionality that are outside its control, including "any lost revenue to customer during outages, equipment failures" and "damage resulting from any actions or inactions of . . . any third party not under Blockware's control." *Id.* The Co-Location Agreement waived any indirect, consequential, special, incidental or punitive damages, including loss of profits and further specified:

BLOCKWARE'S LIABILITIES UNDER THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE, SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY BLOCKWARE FROM CUSTOMER IN THE 12 MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE CLAIM.

*Id.* at §11.2. The Co-Location Agreement also contained language confirming that it was the "final, complete and exclusive statement of the terms of this Agreement" and that "[n]o course of prior dealing between the parties shall be relevant or admissible to supplement, explain or vary the terms of this Agreement." *Id.* at §13.2. The Co-Location Agreement also included a *force majeure* provision that excused performance as a result of any "causes beyond [Blockware's] reasonable

control" *Id.* at §13.6. Finally, the Co-Location Agreement contained an arbitration clause binding the parties to Delaware Law, and mandating that "any and all disputes" concerning the Agreement would be subject to arbitration under the Commercial Rules of the AAA. *Id.* at §13.7.

Following its receipt of Blockware's forms, on October 18, 2021, Faes asked follow-up questions regarding the Co-Location Agreement, including about one term that he "can't agree to" as written, and Blockware clarified that the subject term did not apply to Faes. Compl. Ex. C at 24. Faes then confirmed on October 19 that he wanted to proceed with the purchase of 50 miners, and raised no additional issues concerning the Co-Location Agreement. *Id.* at 21.

Faes signed the Services Agreement on behalf of "Faes & Co"—not "Faes & Co (London) Limited"—on October 25, 2021. Compl. Ex. A at 7. Blockware then facilitated the purchase of 50[2] bitcoin miners on Faes' behalf, and arranged for Co-Location services at its facilities in Pennsylvania, where Blockware proceeded to install, maintain, and operate Faes' mining equipment beginning in April 2022. Compl. ¶¶ 17, 21. In addition to paying for the miners under the terms of the Services Agreement, Faes also paid the setup costs, first and final months' deposit, and monthly service fees, as contemplated under the Co-Location Agreement. *See* Jappa Decl. ¶11. The monthly invoices were sent to Faes at "Christian@Faes.co." *See* Ex H. The monthly invoices were then paid from a variety of accounts, including "Faes & Co US CORP" and "Faes & Co Digital Mining, Inc,"[3] both of which are domestic companies incorporated in Delaware.[4]

Over the course of its business relationship with Blockware, Faes expressed his frustration with Blockware's services, including the hash rate of the bitcoin mining machines. Compl. ¶26.

---

[2] Faes ultimately acquired 51 bitcoin miners through this business arrangement, all of which were returned to Faes at an address in Fort Pierce, Florida in December 2022. *See* Jappa Decl. ¶13.

[3] *See* Jappa Decl. ¶11.

[4] *See* Exhibits 1 and 2 of the Declaration of Meghan K. Spillane ("Spillane Decl."), filed contemporaneously herewith.

Faes also expressed frustration with Blockware's delays in providing certain information about the serial numbers associated with its bitcoin miners. *Id.*[5] Among other conversations, Blockware sought to renegotiate with Faes concerning the mounting energy costs, citing the *force majeure* provision of the Co-Location Agreement, and also cited its ability to exercise rights under the Security Interest provision of that Agreement. Compl. ¶¶29-30. Finally, as a result of challenges with the Pennsylvania facility, the facility was taken offline as of October 20, 2022. Compl. ¶27. Faes' 51 bitcoin mining machines that were being hosted at the Pennsylvania facility have since been returned to Faes. Compl. n.1; *see also* Jappa Decl. ¶13.

## ARGUMENT

### I.  THE COMPLAINT MUST BE DISMISSED FOR LACK OF FEDERAL SUBJECT MATTER JURISDICTION.

Rule 12(b)(1) provides for dismissal of a claim for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). A court must address Rule 12(b)(1) arguments before Rule 12(b)(6) arguments, because "once the district judge has reason to believe that there is a serious jurisdictional issue, [s]he is obliged to resolve it before proceeding to the merits." *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) (internal quotations omitted). In determining whether it has jurisdiction, the court "must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993). Nevertheless, "[t]he burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd v. Angus Chern. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (citation omitted). And even where Plaintiff has pled a *prima facie* case, its pleadings may be overcome by a defendant's uncontradicted evidence that defeats jurisdiction. *See Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009) ("[T]he district court may properly look

---

[5] As acknowledged in the Complaint, that requested information has since been provided. Compl. at n.2.

beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter exists.").

Pursuant to Rule 12(b)(1), the Court should dismiss this action in its entirety as it lacks jurisdiction to hear this dispute. Plaintiff alleges that this Court has diversity jurisdiction over Counts One, Two and Four under 28 U.S.C. 1332(a) because this is a civil action between a corporation based in the United Kingdom and a corporation headquartered in Illinois, and that the Court has supplemental jurisdiction over Plaintiff's state law claims. Compl. ¶¶3-4. But Plaintiff has failed to establish that its United Kingdom entity is actually a party to the contracts at issue in this litigation. The Services Agreement was signed by Faes on behalf of "Faes & Co." *See* Compl. Ex. A at 7. Furthermore, the Co-Location Agreement (which Plaintiff alleges it never signed) was sent to Faes at his "faes.co" email address. *See, e.g.,* Compl. Ex. C at 18-19. Furthermore, Faes utilized the accounts of two United States-based businesses—"Faes & Co US CORP" and "Faes & Co Digital Mining, Inc"—to pay monthly hosting fees to Blockware under the Co-Location Agreement.[6] Finally, at the termination of the parties' contracts, the bitcoin miners were sent to an address in Fort Pierce, Florida. Jappa Decl. ¶13. Blockware has no record of any contracts or transactions with "Faes & Co (London) Limited." *Id.* at ¶¶9, 12. Consequently, beyond conclusory allegations, Plaintiff has not met its burden of competently proving that there is diversity jurisdiction in the instant case. *Wilson v. Master's Miracle, Inc.*, No. 05 C 6590, 2006 WL 163020, at *1 (N.D. Ill. Jan. 19, 2006). Therefore, the Complaint should be dismissed under Rule 12(b)(1).

## II. CLAIMS ARISING UNDER THE CO-LOCATION SERVICES PROVIDED BY BLOCKWARE ARE GOVERNED BY AN ARBITRATION PROVISION.

Should this Court find subject matter jurisdiction over this action, the Court should still dismiss the Complaint under Federal Rule 12(b)(3) and order Plaintiff to arbitrate the claims arising

---

[6] *See* Spillane Decl. at Exs. 1 and 2.

out of the hosting services performed by Blockware pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3-4 because the Co-Location Agreement contains an arbitration clause. *See Johnson v. Orkin*, *LLC*, 556 F. App'x 543, 544–45 (7th Cir. 2014) ("[A] motion seeking dismissal based on an agreement to arbitrate . . . should be decided under Rule 12(b)(3).") (citations omitted). The Court may consider materials outside the pleadings when evaluating such a motion. *Id.* In determining whether to compel arbitration under the FAA, only two "gateway" issues need to be evaluated: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Ali v. Vehi-Ship, LLC*, Case No. 17 CV 02688, 2017 WL 5890876, at *2 (N.D. Ill. Nov. 27, 2017) (Chang, J.).

First, in the instant case, the Co-Location Agreement between Faes and Blockware contains an arbitration clause mandating that "any and all disputes" concerning the Agreement would be subject to arbitration under the Commercial Rules of the AAA. Jappa Decl. Ex. 1 at §13.7. While Plaintiff alleges that it "never signed or otherwise adopted" the Co-Location Agreement (Compl. ¶18), the Agreement contained all the essential terms under which Blockware would provide hosting services to Plaintiff, and Plaintiff availed itself of those services, including paying the fees contemplated under the contract. *See* Jappa Decl. ¶11. The parties' course of conduct makes the Co-Location Agreement enforceable. In *Landmark Properties, Inc. v. Architects Int'l-Chi.*, 172 Ill. App. 3d 379 (1 Dist. 1988)*,* for example, the Court considered whether an arbitration clause in a writing was enforceable, despite the lack of a signature. *Id.* at 382. The Court enforced the unsigned written agreement to arbitrate because it was shown that the parties accepted the written terms through performance of the work, and thus it was determined that the parties' assent was proven through performance. *Id.* at 383–84; *see also Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 713 (7th Cir. 2019) (applying Illinois law, holding that a party named in an arbitration

agreement may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though his has not signed it).[7]  The conduct in the instant case commands the same result under Delaware law, which governs the agreement between the parties.[8]

Second, all of Plaintiff's claims arise out of allegations that Blockware purportedly mismanaged Plaintiff's bitcoin mining systems,[9] services that were provided under the Co-Location Agreement. Consequently, the arbitration clause in the Co-Location Agreement should apply to all of Plaintiff's claims, and the Court should dismiss the complaint under Federal Rule 12(b)(3) because this is the improper venue.

## III.      THE COMPLAINT SHOULD BE DISMISSED ON THE MERITS BECAUSE IT FAILS TO STATE A CLAIM.

In the event this Court determines it has jurisdiction to hear Plaintiff's claims and that venue is proper, this Court should still dismiss Plaintiff's claims on the merits under Rule 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*,

---

[7] *See also Compass Env't, Inc. v. Palu Kai Servs., LLC.*, 379 Ill. App. 3d 549, 554 (1 Dist. 2008) ("We find that, by its course of conduct, defendant assented to the 'terms and conditions' on the reverse side of the purchase order…."); *Ragan v. AT&T Corp.*, 355 Ill. App. 3d 1143, 1149–50 (5 Dist. 2005) (holding silence reflected acceptance of an arbitration agreement where plaintiff had a reasonable opportunity to reject the offer but failed to do so).

[8] *See, e.g., State Ins. Coverage Off. V. Disabatino Constr. Co.*, No. N19C-08-080 EMD CCLD, 2022 WL 811167, at *5 (Del. Super. Ct. Mar. 17, 2022) ("[T]he court may consider evidence of the parties' prior or contemporaneous agreements and negotiations in evaluating whether the parties intended to be bound by the agreement. Furthermore, nothing in the law of contracts requires that a contract be signed to be enforceable.") (internal quotation omitted); *Sarissa Cap. Domestic Fund LP v. Innoviva, Inc.*, No. 2017-0309-JRS, 2017 WL 6209597, at *21 (Del. Ch. Dec. 8, 2017) (holding that an understanding between parties that an agreement should be formally executed does not leave the agreement without binding force in the absence of formal execution).

[9] *See* Compl. ¶41 (the first cause of action alleges that Blockware has "breached its agreement to responsibly manage Faes' bitcoin mining systems"); *id.* at 46 (the second cause of action alleges that Blockware "fail[ed] to use even reasonable efforts to secure and promote the interests of Faes with respect to the bitcoin mining systems"); *id* at 50 (the third cause of action alleges that Blockware "used deceptive representations with respect to the goods or services."); *Id.* at 53 (the fourth cause of action alleges, *inter alia*, that Blockware "engaged in fraudulent misrepresentations regarding…its alleged secure and competent management of its customers miners.")

550 U.S. at 555). Complaints composed of "'naked assertion[s]' devoid of 'further factual enhancement'" are plainly insufficient. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

"Furthermore, when a claim of fraud is brought before a federal court, the Federal Rules of Civil Procedure require that the plaintiff plead 'the circumstances constituting the fraud . . . with particularity.'" *AW Acquisition Corp. v. Southwestern Bell Mobile Sys., LLC*, No. 04-C-1448, 2005 WL 61466, at *4 (N.D. Ill., Jan. 7, 2005) (citing FED. R. CIV. P. 9(b)). "The Seventh Circuit has interpreted this federal requirement to mean that the plaintiff must allege the 'who, what, where, and when' of the purported fraud." *Id.* (internal citations omitted).

### A. Plaintiff Fails to State a Claim for Breach of Contract.

The Services Agreement appended to Plaintiff's complaint at Ex. A and the Co-Location Agreement incorporated by reference into the Complaint and made enforceable through the parties' course of conduct (*see* Section II, *supra*) both underscore that Plaintiff's breach of contract claim must be dismissed, as the alleged breaches that Plaintiff complains of are expressly disclaimed by the parties' contract. Under Delaware law, which governs both contracts, "[i]t is unreasonable to rely on oral representations when they are expressly contradicted by the parties' written agreement." *Flores v. Strauss Water Ltd.*, No. 11141-VCS, 2016 Del. Ch. LEXIS 145, at *21, *28, *30 (Del. Ch. Sept. 22, 2016) (dismissing non-contractual claims where the contractual language made the parties' rights and obligations clear) (Spillane Decl. at Ex. 3).[10]

In the instant case, Plaintiff alleges that Blockware breach the contract by "failing to timely procure and set up the miners as agreed." Compl ¶39. But, under the Services Agreement, Plaintiff

---

[10] *See RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 112–15; 117 (Del. 2012) (holding sophisticated parties may not reasonably rely on representations outside of the contract where the contract contains a provision explicitly disclaiming reliance upon such outside representations)(citing *Abry Parterners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1057–59 (Del. Ch. 2006)).; *Anschutz Corp. v. Brown Robin Cap., LLC*, No. 2019-0710-JRS, 2020 WL 3096744, at *13 (Del. Ch. June 11, 2020) (holding that sophisticated parties to commercial contracts may not rely on information they contractually agreed did not form a part of the basis for their decision to contract).

"acknowledge[ed] and agree[ed] that Blockware has no control over when the specified computer system(s) may become available from the relevant manufacturer and understand[] that Blockware can make no guarantee with respect to a delivery date for the specific computer system(s)." Compl. Ex. A at §1 (emphasis added). Plaintiff alleges that Blockware breached the contract by "failing to ensure reasonable uptime [and] consistent power for the miners." Compl. ¶39. But the Co-Location Agreement makes clear that Blockware shall have no liability for "any interruption of defects in the equipment functionality caused by factors outside of Blockware's reasonable control" and no liability for "any lost revenue to customer during outages, equipment failures, etc." Jappa Ex. 1 at §11.1. Plaintiff alleges that Blockware failed to provide the serial numbers of the miners and "failing to actual own and control the facilities" (Compl. ¶39), but the Complaint fails to point to language within either of the Agreements where such alleged conduct constitutes a breach. Finally, Plaintiff alleges that Blockware breached the contract by "failing to charge energy at the agreed-upon price" (*Id.*), but fails to acknowledge the *force majeure* provision in the parties' contract that Blockware cited as the justification for such action. Jappa Ex. 1 at §13.6.[11]

Finally, Plaintiff's alleged damages for "lost revenue from bitcoin mining, lost revenue from excessive downtime of its miners, excess energy fees, and loss of income from the cessation of operation of Faes' miners" (Compl. ¶42) are not recoverable, as all of these categories of damages are expressly disclaimed by the parties' contracts. *See* Ex. A at §6; Jappa Ex. 1 at §11. "Delaware law permits parties to 'limit or alter the measure of damages recoverable' under a contract and specifically permits consequential damages to be 'limited or excluded unless the limitation….i[s]

---

[11] Even if this Court were to agree with Plaintiff that it is not bound by the Co-Location Agreement, Plaintiff's breach of contract claim would still fail because Plaintiff does not allege which provisions of the alleged oral contract Blockware purportedly breached, but instead relies generally on statements made in Blockware's website and marketing materials. *Volodarskiy v. Delta Air Lines, Inc.*, No. 11 C 00782, 2012 U.S. Dist. LEXIS 154831, at *7–18 (N.D. Ill. Oct. 29, 2012) (finding that statements on a website were not incorporated into a contract) (Spillane Decl. at Ex 3); *Lozano v. United Cont'l Holdings, Inc.*, No. 11 C 8258, 2012 WL 4094648 (N.D. Ill. Sept. 17, 2012) (same).

unconscionable.'" *OC Tint Shop, Inc. v. CPFilms, Inc.*, No. 17-1677-RGA, 2018 WL 4658211, at

*3 (D. Del. Sept. 27, 2018) (quoting DEL. CODE ANN. tit. 6 § 2-719(1), (3)). In the absence of a

showing of unconscionability—which is Plaintiff's burden to establish—Delaware courts will

otherwise honor the limitation of liability provisions that the parties agreed to. *Id.* This Court should

similarly honor the parties' agreement to limit the liability here.

### B. Plaintiff Fails to State a Claim for Negligence.

Plaintiff fails to state a claim for negligence because it has failed to establish that Blockware

owed any duty to it, beyond the rights and obligations expressly governed in the parties' contracts.

The existence of a "duty" under Illinois law "depends on whether the parties stood in such a

relationship to one another that the law imposes an obligation on the defendant to act reasonably

for the protection of the plaintiff." *Woodward v. Am. Family Mut. Ins. Co.*, 950 F. Supp. 1382, 1389

(N.D. Ill. 1997). In determining the existence of a duty, a court must consider "the foreseeability of

the injury, the likelihood of the injury, the magnitude of the burden against guarding against it and

the consequences of placing that duty on the defendant." *Id.* A mere conclusory allegation of duty,

without more, need not be accepted. *Id.* Whether a duty exists is a question of law appropriate for

resolution on a motion to dismiss. *Id.*; *see also NCA Invs. Liquidating Tr. v. TD Bank, N.A. (In re

Seaboard Hotel Member Assocs., LLC)*, Nos. 15-12510 (LSS), 2019 Bankr. LEXIS 3632, at *12

(Bankr. D. Del. Nov. 25, 2019) (Spillane Decl. at Ex. 5).

Here, Plaintiff has failed to adequately allege that Blockware owed Plaintiff any duty to

"disclose relevant information" concerning its "lack of ownership" or "inability to provide

consistent power" or its "failure to provide serial numbers." Compl. ¶46. To the contrary,

Blockware's rights and obligations are expressly spelled out in the Services Agreement and the Co-

Location Agreement, and Blockware expressly disclaimed any rights and obligations not delineated

within the operative agreements. *See* Compl. Ex. A at §8(b); Jappa Decl., Ex. 1 at §13.2.

And to the extent that Plaintiff's claims are premised upon alleged breaches of those contractual obligations, they cannot serve as the basis for a negligence claim. *See Chrysler Rail Transp. Corp. v. Indiana Hi-Rail Corp.,* No. 93 C 5140, 1995 WL 221804, at *5–6 (N.D. Ill. Apr. 11, 1995) (finding that breaching a contract is not tortious conduct and cannot form the basis for a negligence claim); *Sipple v. Connections Cmty. Support Programs, Inc.*, No. N17C-11-290 VLM, 2018 WL 3956477, at *6 (Del. Super. Ct. Aug. 15, 2018) ("Delaware law does not permit a plaintiff to bootstrap a breach of contract claim into a tort claim merely by intoning the *prima facie* elements of the tort while telling the story of defendant's failure to perform under the contract.") (internal quotation omitted).[12]

### C. Plaintiff Fails to State a Claim for Deceptive Trade Practices under Delaware Law.

Further, Plaintiff fails to state a claim under Delaware's Deceptive Trade Practices Act ("DTPA") because Plaintiff fails to allege standing under the statute. DEL. CODE ANN. tit. 6 § 2352(a)(7), (a)(12). First, in order to assert a claim under the DTPA, Plaintiff must "have a 'horizontal' business relationship with the defendant." *OC Tint Shop, Inc.*, 2018 WL 4658211, at *8 (citing *Livery Coach Sols., LLC v. Music Express/E., Inc.*, 245 F. Supp. 3d 639, 648 (D. Del. 2017)). "A horizontal business relationship is one that 'exists between at least two businesses on the same market level, because they manufacture similar products in the same geographic region, or are direct competitors.'" *Id.* (quoting *Chase Bank USA, N.A. v. Hess*, No. 08-121-LPS-MPT, 2013 WL 867542, at *6 (D. Del. Mar. 7, 2013)). In the case at bar, Plaintiff does not allege that it is Defendant's direct competitor. Plaintiff does not otherwise allege the basis that would establish standing to bring a claim. Absent such essential allegations, Plaintiff fails to assert a claim under

---

[12] *See also Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*, No. 04C-05-091 CLS, 2005 WL 445710, at *3 (Del. Super. Ct. Feb. 23, 2005) ("As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.") (internal quotation omitted).

the DTPA. *Id.* at *23. Second, Plaintiff's claim must be dismissed for the second and independent reason that Plaintiff fails to plead a request for injunctive relief, as required under the DTPA. *Lynch v. Coinmaster USA, Inc.*, 614 F. Supp. 2d 494, 504 (D. Del. 2009). Here, Plaintiff does not make a claim for injunctive relief, nor could it make one. "Without a basis for injunctive relief, . . . plaintiffs have failed to meet the threshold for a treble damages claim under the [DTPA]." *Irgau v. Christiana Care Health Servs.*, No. 07C-11-180-JOH, 2008 WL 1724250, at *5 (Del. Super. Ct. Apr. 9, 2008). Accordingly, the DTPA claim must be dismissed. *Id.* at *14.

### D. Plaintiff Fails to State a Claim for Fraud.

Finally, Plaintiff fails to state a claim for fraud, which requires the following elements: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance. *See Enter. Warehousing Sols., Inc. v. Cap. One Servs.*, No. 01C 7725, 2002 WL 406976, at *6 (N.D. Ill. Mar. 15, 2002). "[M]isrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud." *Fenner v. Favorite Brand Int'l*, No. 97 C 5906, 1998 WL 249232, at *6 (N.D. Ill. May 12, 1998) (internal quotation omitted).

As the Seventh Circuit explained in *Bauer v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992), "[i]n order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief. If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed." *Id.*

In the instant case, Plaintiff does not specifically allege that Blockware perpetrated a scheme to defraud Plaintiff, but instead cites "fraudulent misrepresentations and concealment" that are

-14-

largely duplicative of the allegations in its breach of contract claims. *Compare* Compl. ¶39 *with* Compl. ¶53. Such duplicative allegations must be dismissed. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011) ("[F]raud claims must contain something more than reformulated allegations of a contractual breach.") (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d. 100, 169 (2005).[13] In addition, there are "no allegations that [Blockware's] promises were made with knowledge at the time that [its] promises were false." *Serig v. S. Cook Cnty. Serv. Corp.*, 581 F. Supp. 575, 579 (N.D. Ill. 1984). And even if such allegations had been made, "sufficient facts must be alleged from which [a] scheme can be inferred." *Id*. The complaint points to no specific, objective manifestations of fraudulent intent beyond conclusorily alleging "upon information and belief" that "Blockware's acts complained of herein are willful and deliberate." Compl. ¶34. Plaintiff's allegations therefore fall well short of the pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that fraud claims be pled with particularity.

Further, the claimed damages that Plaintiff seeks through its fraud claims are expressly disclaimed by the parties' contract. *See supra*, at 11.

## CONCLUSION

For all of these reasons, this Court should dismiss Plaintiff's complaint for lack of jurisdiction and improper venue. As an alternative, the Court should dismiss Plaintiff's claims on the merits.

Dated: January 26, 2023                    Respectfully submitted,

                                           */s/ Meghan Spillane*
                                           Meghan K. Spillane (*pro hac vice* pending)

---

[13] Delaware law commands the same result. *Collab9, LLC v. En Pointe Techs. Sales, LLC*, Nos. N16C-12-032 MMJ CCLD, 2019 WL 4454412, at *3 (Del. Super. Ct. Sept. 17, 2019) ("Fraud claims that duplicate contract claims, and seek essentially the same recovery, cannot survive."); *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, No. N16C–07–080 PRW, CCLD, 2017 WL 1019730, at *5–6 (Del. Super. Ct. Mar. 13, 2017) (Holding that a successful fraud claim requires damages separate from a breach of contract claim and the allegations cannot simply rehash the damages by the claimed breach of contract).

-15-

Catherine A. Tremble (*pro hac vice* pending)
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
Fax: (212) 355-3333
mspillane@goodwinlaw.com
ctremble@goodwinlaw.com


*/s/ Alan M. Ritchie*
Anna-Katrina S. Christakis
Alan M. Ritchie
**Pilgrim Christakis LLP**
One South Dearborn Street, Suite 1420
Chicago, Illinois 60603
Ph. (312) 924-1773
Fax (312) 939-0983
kchristakis@pilgrimchristakis.com
aritchie@pilgrimchristakis.com


*Attorneys for Blockware Solutions LLC*

**CERTIFICATE OF SERVICE**

I, Alan M. Ritchie, an attorney, hereby certify that, on January 26, 2023, I caused the foregoing to be electronically filed via the Court's CM/ECF system, which effected service on all counsel of record.


*/s/ Alan M. Ritchie*
Alan M. Ritchie