IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FAES & COMPANY (LONDON) LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> BLOCKWARE SOLUTIONS, LLC <br><br> Defendant. | Civil Action No. 22-cv-7121 <br><br> Judge:  Hon. Virginia M. Kendall |

# DECLARATION OF MASON JAPPA

I, Mason Jappa, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I submit this Declaration in support of the Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim being filed contemporaneously herewith. I have personal knowledge of the facts stated in this Declaration and would be competent to testify to them.

2. I currently serve as the Chief Executive Officer of Blockware Solutions, LLC ("Blockware").

3. Blockware is a limited liability corporation organized under the laws of Delaware. Its principal place of business is currently in Austin, Texas.

4. The limited liability corporation has several members, including employees that reside in Illinois.

5. On October 15, 2021, I sent an email to Christian Faes on behalf of Faes & Co attaching a document titled "Blockware_Services Agreement Template Updated7_16_211(1)"

1

(the "Services Agreement") and "Blockware Solutions – Form of Co-Location Agreement.docx" (the "Co-Location Agreement").

6. A true and correct copy of the Co-Location Agreement attached to my October 15, 2021 email is attached hereto as **Exhibit 1**.

7. On October 25, 2021, Mr. Faes signed the Services Agreement on behalf of Faes & Co.

8. Blockware's books and records do not contain evidence of any agreement with Faes & Co (London) Limited.

9. Beginning in or around April 2022, Blockware began providing services to Faes under the Co-Location Agreement.

10. Blockware sent the invoices for the hosting services provided under the Co-Location agreement to Mr. Faes.

11. Blockware received monthly payments for the hosting services provided under the Co-Location Agreement from multiple entities affiliated with Mr. Faes, including:

   a. A May 12, 2022 wire from Faes & Co U.S. Corp., which constituted a deposit for the hosting services;

   b. A June 8, 2022 wire from Faes & Co Digital Mining, Inc.;

   c. A July 8, 2022 wire from Faes & Co Digital Mining, Inc.;

   d. An August 8, 2022 wire from Faes & Co US Corp.;

   e. A September 6, 2022 wire from Faes & Co Digital Mining, Inc.; and

   f. A October 5, 2022 wire from Faes & Co US Corp.

12. Blockware's books and records do not contain evidence of any wire payments sent by Faes & Co (London) Limited.

13. On December 16, 2022, Blockware arranged to have Mr. Faes's 51 cryptocurrency miners returned and delivered to an address of his choosing. Mr. Faes directed Blockware to deliver the machines to "Faes & Co" in Fort Pierce, Florida, and Blockware completed the delivery.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 25, 2023

New York, NY

Mason Jappa

# EXHIBIT 1

**COLOCATION FACILITY SERVICES AGREEMENT**

This Colocation Facility Services Agreement (this "**Agreement**") is dated as of the date indicated on the signature page (the "**Effective Date**"), and is made by and between Blockware Solutions LLC, a Delaware limited liability company ("**Blockware**") and [●] ("**Customer**"). Blockware and Customer are sometimes hereinafter referred to as each, a "Party", and together, the "Parties".

WHEREAS, Customer has purchased certain digital asset mining equipment from Blockware (the "**Mining Equipment**");

WHEREAS, Customer wishes to retain Blockware to install, maintain and operate the Mining Equipment; and

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, the adequacy, receipt and sufficiency of which are hereby acknowledged, the Parties mutually agree as follows:

1. **SERVICES AND FACILITY**

    **1.1.** _Services_. Blockware will provide certain services, including but limited to the installation, maintenance and operation of Mining Equipment, as well as electrical power and Internet (collectively, the "**Services**"). Blockware will not provide any services other than the Services described above.

    **1.2.** _Facility_. Blockware will provide the Services to Customer at the Blockware facility (the "**Facility**") specified on the Order Form (the "**Order Form**"), a copy of which is attached hereto as **Exhibit A**. Blockware may update, amend or modify the Order Form from time to time to add or delete Mining Equipment or Services, as appropriate.

2. **TERM AND TERMINATION**

    **2.1.** _Term_. The term of this Agreement shall commence on and include the Effective Date and shall end on and include the day that is the earlier of (a) the day that Blockware notifies Customer in writing that Blockware has terminated this Agreement pursuant to Section 2.2 below and (b) the final day of the Term (as specified in the Order Form).

    **2.2.** _Termination for Cause_. Blockware may terminate this Agreement for cause immediately following written notice to Customer, if Customer: (a) fails to make any payment(s) when due pursuant to this Agreement; (b) breaches, repudiates, violates, or fails to perform or fulfill any covenant, agreement or provision of this Agreement; (c) makes or is deemed to have made any representation or warranty under this Agreement that is incorrect or misleading in any material respect; (d) consolidates or amalgamates with, or merges into, or transfers all or substantially all of its assets or reorganizes or reconstitutes into or as, another entity, and the resulting, surviving or transferee entity fails to assume all of the obligations of Customer under this Agreement or (e) dissolves, liquidates, seeks protection under any bankruptcy or insolvency law or proceeding or similar law affecting creditors' rights, becomes insolvent or is unable to pay its debts or fails or admits in writing its ability generally to pay its debts as they become due (each event, a "**Default**").

**2.3.** *Effect of Termination*. In the event of a Default by Customer, Customer agrees to pay immediately to Blockware all amounts then owed as determined by Blockware. If Customer fails to make any such payments, without further notice to Customer, Blockware shall have the right to promptly (a) obtain or retain possession of; (b) reconfigure for Blockware's use; or (c) remove and store at Customer's sole expense, all or any portion of the Mining Equipment without any cost, obligation or liability of Blockware to Customer. All deposits and payments by Customer are non-refundable and, in the event of a Customer's Default, Blockware shall have no further obligation or liability to Customer.

3. **COLOCATION AND MINING SERVICES FEE**

    **3.1.** *Initial Setup Fees*. Customer shall pay Blockware the Initial Setup Fee (as specified on the Order Form). Blockware shall determine the Initial Setup based on, among other things, the cost to prepare the Facility and install the Mining Equipment at the Facility. The Initial Setup Fee is due within five (5) business days of the Effective Date.

    **3.2.** *Monthly Service Fees*. Customer shall pay Blockware the Monthly Service Fee (as defined on the Order Form). Blockware shall determine the Monthly Service Fees based on, among other things, the Expected Hourly Consumption (as specified on the Order Form) of power for the Mining Equipment at the Facility, the projected operating costs of the Facility and other expenses related to the monthly operation and maintenance of the Mining Equipment at the Facility. The first Monthly Service Fee is due within five (5) business days of the Effective Date.

    **3.3.** *Adjustment*. Blockware shall make adjustments to the Monthly Service Fee as appropriate by Blockware for changes in the number of mining rigs and foreseeable changes in operating costs at the Facility (the "**Estimated Monthly Amount**"). The first Monthly Service Fee shall be due within five (5) business days of the Effective Date. Thereafter, subsequent invoices will be invoiced on the 25th day of the following month after deployment and will be an advance of the Estimated Monthly Amount. On a quarterly basis, an adjustment invoice will be issued, based on the number of miners and metered amount of power for the prior quarter. Invoices shall be paid by Customer within five (5) business days from the date of the invoice issued by Blockware.

    **3.4.** *Taxes*. Where applicable, Customer is responsible for paying any and all taxes, including without limitation any federal, state, or local taxes on manufacture, sales, gross income, receipts, occupation, or use.

    **3.5.** *Payment Method*. All payments due and owing under this Agreement shall be made in the manner specified on the Order Form. Late payments will incur interest at the lesser of 1.5% per month (18% per annum) or the maximum amount allowed under applicable law.

    **3.6.** *Remedies*. If Customer fails to pay any amount due and owing under this Agreement, Customer acknowledges and agrees that Blockware's remedies shall have the right to (a) power down the Mining Equipment, (b) block or limit access to the Mining Equipment, (c) discontinue or limit the Services to Customer; (d) disconnect the Mining Equipment from all Internet, power and telecommunications services; (e) repossess or remove the Mining Equipment from the Facility and/or place in storage; and (f) require Customer to pay any and all amounts due under this Agreement; (g) take any action specified in the Order

Form and/or (h) terminate this Agreement and take such actions described in Section 2.2 above.

4. **SECURITY INTEREST**

Customer hereby grants a first lien security interest in the Mining Equipment in favor of Blockware to secure the obligations of Customer under this Agreement. Blockware may, at such time as it determines appropriate, file a UCC-1 Financing Statement in such places as it determines to evidence the security interest granted by Customer to Blockware under this Agreement. Customer hereby authorizes Blockware to file a UCC financing or continuation statement describing the Mining Equipment and the proceeds of such equipment as "collateral" to secure Customer's obligations under this Agreement in any manner that Blockware or its counsel deems appropriate, including a description of such collateral to include the Mining Equipment, the proceeds of the equipment including "all assets, whether now owned or hereafter acquired" (or words of similar effect) (collectively the "**Collateral**"). Customer hereby pledges to Blockware, as security for Borrower's obligations hereunder, and grants to Blockware, a first priority continuing security interest in, lien on and rights to net and set-off any amounts owed against the Collateral. Customer agrees to undertake actions reasonably necessary to preserve the lien and security interest on the Collateral so that the Collateral remains subject to the first priority perfected security interest granted hereunder. Notwithstanding any termination of this Agreement, Blockware's first priority security interest in the Collateral shall remain in effect for so long as any unpaid amounts due or owing to Blockware remains outstanding.

5. **NETWORK & ACCESS**

**5.1.** *Network*. Blockware will provide local network connectivity to each piece of Mining Equipment for Customers to remotely manage their Mining Equipment.

**5.2.** *Access*. Access to the Facility is limited. Only those persons specifically authorized in writing by Blockware may access the Facility. Blockware may deny or suspend Customer's access to the Mining Equipment without notice to Customer; provided that:

    5.2.1. All access into the Facility must be supervised by a Blockware representative.

    5.2.2. Customer shall request access to the Facility in writing.

    5.2.3. Blockware will make every reasonable attempt to accommodate Customer's after-hour emergency service requests. Service may occur based on availability of Blockware staff and relevant health and safety considerations.

**5.3.** *Hazardous Conditions*. If, bases on the good faith and reasonable discretion of Blockware, its employees or agents, any hazardous conditions arise on, from, or affecting the Facility, Blockware is hereby authorized to suspend service under this Agreement without notice or subjecting Blockware to any liability or further obligations.

6. **SERVICES AND OPERATION OF THE MINING EQUIPMENT**

Customer acknowledges that the Facility may be situated at an or near an industrial site which may be subject to hazardous waste, dust and high temperature generated by pre-existing industrial operations. Accordingly, Customer understands and acknowledges that Blockware has reviewed the operation conditions at the Facility and agrees that such conditions are acceptable to host the Mining Equipment. The Parties acknowledge and agree that Blockware, its affiliates, agents, officers, directors and employees shall not be liable for any damages caused to the Mining Equipment by the operating conditions of the industrial site where the Facility is situated.

7. **CUSTOMER AGREEMENTS**

    **7.1.** *Blockware Pool*. Customer will use Blockware Pools, including FPPS, for Customer's operations at the Facility.

    **7.2.** *Acceptable Use*. Customer will only use the Facility and the Mining Equipment located at the Facility for the hashing, validation, staking and/or minting of digital assets.

    **7.3.** *Compliance with Laws*. Customer will comply with all laws, including international laws applicable to Mining Equipment, the laws of the United States of America, the laws of the states in which Customer is doing business, and the state and local laws where the Facility is located.

    **7.4.** *Licenses and Permits*. Customer will obtain and maintain any authorizations, licenses, permits, consents, or approvals from any federal, state or local government, which may be necessary to install, possess, own, or operate the Mining Equipment.

    **7.5.** *Insurance*. Customer will obtain and maintain adequate insurance coverage for the Mining Equipment. Customer agrees to look exclusively to Customer's insurer to recover for injury or damage in the event of any loss or injury, and releases and waives all right of recovery against Blockware and its agents, affiliates, subsidiaries, officers, directors and employees.

    **7.6.** *Equipment in Good Working Order*. Customer will ensure all Mining Equipment is in good working order and suitable for use in the Facility. Customer understands and agrees that Customer is responsible for any costs associated with the troubleshooting and repair of Mining Equipment received in non-working order, including labor and parts. Blockware is not responsible in any way for installation delays or loss of profits as a result of Mining Equipment deemed not to be in good working order at the Facility.

    **7.7.** *Modification and/or Overclocking of Equipment*. Customer will notify Blockware, and obtain prior written approval from Blockware, before making any modifications, alterations, firmware adjustments or overclocking of Customer's Mining Equipment where the effect of which would cause such Mining Equipment to fail to meet the standard and/or factory specifications.

    **7.8.** *Event of Emergency*. In the event of an emergency, as determined in Blockware's reasonable discretion, Customer understands and agrees that Blockware may rearrange, remove, or relocate the Mining Equipment without any liability to Blockware.

Notwithstanding the foregoing, in the case of emergency, Blockware shall provide Customer, to the extent practicable, reasonable notice prior to rearranging, removing, or relocating the Mining Equipment.

**7.9.** *Removal*. Customer will not remove any of the Mining Equipment from the Facility without the prior written authorization of Blockware. Customer will provide Blockware with written notification a minimum of thirty (30) days before Customer wishes to remove any of the Mining Equipment from the Facility. Before authorizing the removal of the Mining Equipment, Blockware will verify that Customer has no payments due. Once Blockware authorizes the removal of the Mining Equipment from the Facility, Customer will remove such Mining Equipment, and shall be solely responsible for arranging for the removal with the manager of the Facility and Customer shall be solely responsible to provide appropriate packaging and moving materials. If Blockware permits Customer to use an agent or other third party to remove the Mining Equipment, Customer shall be solely responsible for the acts of such party, and any damages caused by such party to the Mining Equipment or otherwise.

**7.10.** *Developments*. Customer will make full and prompt disclosure to Blockware of all inventions, discoveries, designs, developments, methods, modifications, improvements, processes, algorithms, data, databases, computer programs, research, formulae, techniques, trade secrets, graphics or images, and audio or visual works and other works of authorship, and other intellectual property, including works-in-process (collectively "**Developments**") whether or not patentable or copyrightable, that are created, made, conceived or reduced to practice by Customer (alone or jointly with others) or under Customer's direction during the Term. Customer acknowledge that all work performed by Customer is on a "work for hire" basis, and is hereby do assigned and transferred and, to the extent any such assignment cannot be made at present, will assign and transfer, to the Company and its successors and assigns all of Customer's right, title and interest in and to all Developments that relate to the business of Blockware or any customer of, supplier to or business partner of Blockware or any of the products or services being researched, developed, manufactured or sold by Blockware or which may be used with such products or services.

8. **CUSTOMER REPRESENTATIONS AND WARRANTIES**

**8.1.** *Status*. Customer is duly organized and validly existing under the laws of the jurisdiction of its organization or incorporation and, if relevant under such laws, in good standing.

**8.2.** *Powers*. Customer has the power to execute this Agreement and any other documentation relating to this Agreement to which it is a party, to deliver this Agreement and any other documentation relating to this Agreement that it is required by this Agreement to deliver and to perform its obligations under this Agreement.

**8.3.** *No Violation or Conflict*. Such execution, delivery and performance do not violate or conflict with any law applicable to it, any provision of its constitutional documents, any order or judgment of any court or other agency of government applicable to it or any of its assets or any contractual restriction binding on or affecting it or any of its assets.

**8.4.** *Consents*. All governmental and other consents that are required to have been obtained by it with respect to this Agreement to which is Customer a party have been

obtained and are in full force and effect and all conditions of any such consents have been complied with; and

**8.5.** **Obligations Binding**. Its obligations under this Agreement to which Customer is a party constitute its legal, valid and binding obligations, enforceable in accordance with their respective terms

**8.6. Not a Prohibited Person**. Neither Customer, nor any of its affiliates, equity holders, directors, officers, managers, or direct or indirect beneficial owners, (i) appears on the Specially Designated Nationals and Blocked Persons List or other anti-money laundering ("**AML**") list, nor are they located in a prohibited jurisdiction or otherwise a party with which Customer is prohibited to deal under the laws of the United States, (ii) is a person identified as a terrorist organization on any other relevant lists maintained by governmental authorities, or (iii) is a senior foreign political figure, or any immediate family member or close associate of a senior foreign political figure. Customer (A) has conducted thorough know your customer ("**KYC**") due diligence with respect to all of its affiliates, equity holders, directors, officers, managers and beneficial owners, (B) has established the identities of all of them and the source of each of their funds, and (C) will retain evidence of those identities, any source of funds and any due diligence.

**8.6.** *Accuracy of Information*. All information provided to Blockware by Customer is accurate, current and not misleading in any material respect, including without limitation, the KYC, AML and other information provided to Blockware on Customer's Client Onboarding Form, a copy of which is attached hereto as **Exhibit B**. Customer will update, amend or modify the Client Onboarding Form as necessary to provide notice to Blockware of any changes in Customer information.

9. **COMMON CARRIER**

Blockware and Customer agree that Blockware is acting solely as a common carrier in its capacity of providing the services hereunder, and is not a publisher of any material or information. Furthermore, Blockware has no right or ability to censor materials or information traversed through Blockware's networks.

10. **WARRANTY & DISCLAIMER**

BLOCKWARE MAKES NO WARRANTIES OR GUARANTEES RELATED TO THE AVAILABILITY OF SERVICE OR THE OPERATING TEMPERATURE OF THE FACILITY. THE SERVICE AND THE FACILITY PROVIDED BY BLOCKWARE IS PROVIDED "AS IS." BLOCKWARE MAY NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE FACILITY IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY, ETC. BLOCKWARE MAKES NO WARRANTY WHATSOEVER, INCLUDING ANY (A) WARRANTY OF MERCHANTABILITY; (B) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; or (C) WARRANTY AGAINST INTERFERENCE. BLOCKWARE DOES NOT WARRANT THAT (A) THE SERVICE SHALL BE AVAILABLE 24/7 OR FREE FROM INTERRUPTIONS; (B) THE SERVICE SHALL MEET CUSTOMER'S REQUIREMENTS; OR (C) THE SERVICE SHALL PROVIDE ANY FUNCTION NOT DESCRIBED IN THIS AGREEMENT.

**11. LIMITATION OF LIABILITY**

**11.1.** Customer understands and acknowledges that in some situations Mining Equipment functionality may be unavailable due to factors outside of Blockware's control. This includes, but is not limited to network failures, pool operator failures, denial of service attacks, currency network outages, hacking or malicious attacks on the crypto networks or exchanges, power outages, or acts of God. BLOCKWARE SHALL HAVE NO OBLIGATION, RESPONSIBILITY, AND/OR LIABILITY FOR THE FOLLOWING: (A) ANY INTERRUPTION OR DEFECTS IN THE EQUIPMENT FUNCTIONALITY CAUSED BY FACTORS OUTSIDE OF BLOCKWARE'S REASONABLE CONTROL; (B) ANY LOSS, DELETION, OR CORRUPTION OF CUSTOMER'S DATA OR FILES WHATSOEVER; (C) ANY LOST REVENUE TO CUSTOMER DURING OUTAGES, EQUIPMENT FAILURES, ETC.; (D) DAMAGES RESULTING FROM ANY ACTIONS OR INACTIONS OF CUSTOMER OR ANY THIRD PARTY NOT UNDER BLOCKWARE'S CONTROL; OR (E) DAMAGES RESULTING FROM EQUIPMENT OR ANY THIRD PARTY EQUIPMENT.

**11.2.** IN NO EVENT SHALL BLOCKWARE BE LIABLE TO CUSTOMER OR ANY OTHER PERSON, FIRM, OR ENTITY IN ANY RESPECT, INCLUDING, WITHOUT LIMITATION, FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF MISTAKES, NEGLIGENCE, ACCIDENTS, ERRORS, OMISSIONS, INTERRUPTIONS, OR DEFECTS IN TRANSMISSION, OR DELAYS, INCLUDING, BUT NOT LIMITED TO, THOSE WHICH MAY BE CAUSED BY REGULATORY OR JUDICIAL AUTHORITIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OBLIGATIONS OF BLOCKWARE PURSUANT TO THIS AGREEMENT. EXCLUDING ANY CLAIMS FOR INDEMNIFICATION UNDER SECTION 11, BLOCKWARE'S LIABILITIES UNDER THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE, SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY BLOCKWARE FROM CUSTOMER IN THE 12 MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE CLAIM.

**11.3.** Customer's sole remedy for performance or non-performance of the terms of this Agreement shall be a refund of any fees paid to Blockware for the current service month. Unless applicable law requires a longer period, any action against Blockware in connection with this Agreement must be commenced within one year after the cause of the action has occurred.

**12. INDEMNIFICATION**

Customer will indemnify, hold harmless, and defend Blockware and their subsidiaries, employees, agents, directors, owners, executives, representatives, and subcontractors from any liability, claim, judgment, loss, cost, expense or damage, including attorneys' fees and legal expenses, brought by any party on account of the Mining Equipment of the Facility or Customer's use of the Mining Equipment or the Facility, arising out of this Agreement or any injuries or damages sustained by any person or property due to any direct or indirect act, omission, neglect or misconduct of Customer, its agents, representatives, employees, contractors and their employees and subcontractors and their employees.

13. **MISCELLANEOUS**

13.1. <u>*Representations*</u>. The Parties have not made or relied upon any representations, understandings, or other agreements not specifically set forth in this Agreement.

13.2. <u>*Entire Agreement*</u>. This Agreement, the Order Form, Customer onboarding form and any documents appended to or referenced in this Agreement represent the entire Agreement between the parties and is a final, complete and exclusive statement of the terms of this Agreement. No course of prior dealing between the parties shall be relevant or admissible to supplement, explain, or vary any of the terms of this Agreement.

13.3. <u>*Waiver, Severability*</u>. The waiver of any breach or default does not constitute the waiver of any subsequent breach or default. If any provision of this Agreement is held to be illegal or unenforceable, it shall be deemed amended to conform to the applicable laws or regulations, or, if it cannot be so amended without materially altering the intention of the parties, it shall be stricken, and the remainder of this Agreement shall continue in full force and effect.

13.4. <u>*Amendment*</u>. This Agreement may be amended or modified, and the observance of any term hereof may be waived, only by a written instrument executed by Blockware and Customer.

13.5. <u>*Assignment*</u>. Neither this Agreement nor any right or obligation arising under this Agreement may be assigned by Customer in whole or in part, without the prior written consent of Blockware. Blockware may at any time assign, transfer, delegate or subcontract any or all of their rights or obligations under this Agreement without Customer's prior written consent. Subject to the restrictions on assignment of this Agreement, this Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors, and assigns.

13.6. <u>*Force Majeure*</u>. Neither party shall be liable in any way for delay, failure in performance, loss or damage due to any of the following force majeure conditions; fire, strike, embargo, explosion, power failure, flood, lightning, war, water, electrical storms, labor disputes, civil disturbances, governmental requirements, acts of civil or military authority, acts of God, pandemics, acts of public enemies, inability to secure replacement parts or materials, cyber-incidents, telecommunications services, transportation facilities, or other causes beyond its reasonable control, whether or not similar to the foregoing. This also includes planned service, operation and maintenance needs.

13.7. <u>*Governing Law; Waiver of Jury Trial; Arbitration*</u>. This Agreement will be governed by and construed in accordance with the laws of the State of Delaware without regard to any choice or conflict of laws rules. The Parties irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of or relating to this Agreement. Each Party agrees to submit any and all disputes concerning this Agreement, if not resolved between the parties, to binding arbitration under one (1) neutral, independent and impartial arbitrator in accordance with the Commercial Rules of the American Arbitration Association ("AAA"); provided that, the arbitrator may not vary, modify or disregard any of the provisions contained in this Agreement. The decision and any award resulting from such arbitration shall be final and binding. The arbitrator is not empowered to award damages in excess of compensatory

damages and each party hereby irrevocably waives any right to recover such damages with respect to any dispute resolved by arbitration. Both Parties shall equally share the fees of the arbitrator. The arbitrator may award attorney's fees to the prevailing party as determined by the arbitrator.

**13.8.** *Relationship of the Parties*. The parties agree that their relationship hereunder is in the nature of independent contractors. Neither party shall be deemed to be the agent, partner, joint venturer or employee of the other, and neither shall have any authority to make any agreements or representations on the other's behalf. Each party shall be solely responsible for the payment of compensation, insurance and taxes of its own personnel, and such personnel are not entitled to the provisions of any employee benefits from the other party. Neither party shall have any authority to make any agreements or representations on the other's behalf without the other's written consent. Additionally, Blockware shall not be responsible for any costs and expenses arising from Customer's performance of its duties and obligations pursuant to this Agreement.

**13.9.** *Interpretation*. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation and construction of this Agreement, and this Agreement shall be construed as having been jointly drafted by the parties. The titles and headings for particular paragraphs, sections and subsections of this Agreement have been inserted solely for reference purposes and shall not be used to interpret or construe the terms of this Agreement.

**13.10.** *Counterparts*. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but which together shall constitute one and the same document.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of [●].

**BLOCKWARE SOLUTIONS LLC**:      [CUSTOMER]:

By: *Mason Jappa*      By:
Name: Mason Jappa      Name:

Title: CEO      Title:

**EXHIBIT A**

ORDER FORM

[Attach copy of Customer Order Form]

ACTIVE/112020988.7

**EXHIBIT B**

BLOCKWARE SOLUTIONS NEW CLIENT ONBOARDING FORM

[Attach copy of Customer Information Form]

ACTIVE/112020988.7