IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FAES & COMPANY (LONDON) LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>BLOCKWARE SOLUTIONS, LLC,<br><br>    Defendant. | Case No. 22-cv-7121<br><br>Judge: Hon. Virginia M. Kendall |

**FAES & COMPANY (LONDON) LIMITED'S OPPOSITION TO
BLOCKWARE'S MOTION TO DISMISS THE COMPLAINT**

**PRELIMINARY STATEMENT**

Defendant Blockware Solutions LLC's ("Blockware") motion is styled as a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), but much of the motion is directed to arguing various factual matters that contravene the plain allegations of Faes & Company (London) Limited's ("Faes") Complaint. In this sense, the motion is more akin to a motion for summary judgment than a typical motion to dismiss. Indeed, Blockware's arguments turn, often sub silentio, on alleged facts that expressly contradict those detailed in the Complaint and its exhibits, and the Court should deny Blockware's motion on that basis.

Among other things, Blockware's motion argues that this court lacks diversity jurisdiction because there are multiple Faes & Co entities, and so, apparently, Faes & Co (London) Limited is not the proper plaintiff. The legal basis for the proposition is not entirely clear, as Faes & Co (London) Limited expressly ordered the machines and services at issue in this case. In fact, it is notable that the other two US-based Faes & Co entities did not even exist when Faes & Company (London) Limited formed its contract with Blockware. There is thus no credible basis for concern that the Court lacks diversity jurisdiction in this matter.

Further, Blockware seeks to have the Court determine various contested factual questions in its favor and apply Rule 12(b)(3) in a manner more suited to a motion a compel arbitration than a motion for improper venue. If Blockware wished to bring a motion to compel arbitration under the Federal Arbitration Act, with attendant procedures that involve a more searching factual inquiry, it could have done so. It may still be able to do so. However, it is not appropriate to determine the issue of arbitrability under Rule 12(b)(3).

Finally, when Blockware presents arguments for dismissal under Rule 12(b)(6), it does so largely by presuming that a contract Faes refused to sign and expressly repudiated somehow

controls the parties' relationship. In the context of a motion to dismiss, however, the Court should adhere to the allegations of the Complaint and not credit Blockware's defenses based on contested facts.

**FACTUAL BACKGROUND**

Blockware begins its motion to dismiss with a nearly 1,500 word "Factual Background". This is fairly extensive for a motion to dismiss presumably focused the alleged failure of Faes' 20-page Complaint and 10 exhibits to state any viable legal claims against Blockware. Indeed, the facts that ultimately call into doubt Blockware's motion are detailed at length in Faes' Complaint. It will thus be useful to reiterate some of the allegations in the Complaint to avoid any misapprehension about the nature of Faes' claims.

In particular, it is important to consider which contracts are at issue to this action. This is detailed in paragraphs 15-18 of the Complaint under the heading "THE CONTRACT" and in the body of the claims alleged. First, there is the Services Agreement attached as Exhibit A to the Complaint. This contract was signed by Christian Faes on behalf of "Faes & Co." on October 25, 2021. As the Complaint notes, this is the "Services Agreement" pursuant to which Blockware was to procure $525,000 worth of Bitcoin miners for Faes. Complaint at ¶1. This Services Agreement covers the procurement but not the hosting of the purchased miners, and it terminated once the miners were procured. Complaint at ¶17. This agreement contains no arbitration clause, but it does include a venue clause that:

> Without limiting the scope of the foregoing, the parties hereby consent to the exclusive jurisdiction of the courts of the State of Illinois or the Federal courts of the United States, in each case sitting in Cook County, Illinois, in any suit, action or proceeding ("Proceeding") relating to this Agreement.

Compl. Ex. A at 5, sec. 8(e). This venue clause is why Faes filed suit in the Northern District of Illinois. Compl. ¶6.

3

Second, there is Blockware's proposed "Colocation Facilities Services Agreement", a copy of which Mason Jappa of Blockware emailed to Christian Faes. Faes objected to this contract, did not agree to it, and did not sign it. As the Complaint notes, "Mr. Jappa of Blockware had earlier emailed Mr. Faes a separate 'Colocation Facilities Services Agreement' for review, but Mr. Faes objected to its terms and never signed or otherwise adopted this Agreement." Complaint at ¶18, citing Ex. C at p. 5-6. The exhibit cited in the Complaint is an email from Christian Faes to Mason Jappa where Mr. Faes notes, *inter alia*, that:

> Re the Colocation Facilities Agreement:
> - clause 7.1, do we have to use Blockware's pool? Is there any accommodation/flexibility in the event that we were able to get better returns using a different pool?
> - what are the fees associated with Blockware's pool? c/f Compass we're currently with F2Pool at 1.2% fee.
> - clause 7.10 - I'm not sure what is intended by this clause, <u>but we can't agree to this</u>, if the intention is that we need to disclose all technology Developments of our firm to Blockware, and to make such Developments available for use by you. I assume that his clause can be struck out.

Compl. Ex. C at 19-20 (p. 5 of Ex. C) (emphasis original). Mr. Jappa did not sufficiently address Mr. Faes' concerns, and so Faes never agreed to or signed the Colocation Agreement. Nevertheless, in its motion to dismiss Blockware attempts to bootstrap the fact that it had emailed a draft contract to Faes, to which Faes expressly objected, into Faes' acceptance of the contract. That is not how contracts work.

Finally, there is the actual contract for hosting services between Faes and Blockware, the essential terms of which are delineated in the extended written negotiations between the parties in the 15-page email chain attached as Exhibit C to the Complaint. As the Complaint notes:

> Thus, [the] 'hosting agreement' agreed to between the parties is that agreement manifested in the parties' communications, Blockware's representations, and the reasonable and good faith performance implied by law. Faes' breach of contract claim is based on Blockware's failure to provide hosting services consistent with its representations and the parties' negotiated arrangement.

Compl. ¶18. The parties negotiated and agreed to the essential terms of their contractual

4

relationship: Blockware agreed in writing to procure miners for a specific price by a fixed date and to provide hosting services for one-year at facilities it owned for an energy cost of $0.068 kW/h in exchange for up-front payment of over half-a-million dollars plus two-months of hosting fees. Compl, Ex. C. Nothing more is needed for a legally binding contract. If Blockware was only willing to provide hosting services only under the terms of a 4000-word "Colocation Facilities Services Agreement" drafted to give itself maximal protection for any bad acts, then Blockware should have ensured that Faes agreed to and signed that contract. It did not.

Now, the nature and terms of the two contracts formed by the parties are properly pled in detail in the Complaint. To the extent creative arguments could be asserted to bootstrap Faes into a third contract to which it expressly objected, such arguments turn on undeveloped and contested facts and are not properly the subject of a motion to dismiss under FRCP 12(b)(6), and it would not be proper for the Court to determine such issues at the pleadings stage.

## ARGUMENT

### I. THE COURT HAS DIVERSITY JURIDISCTION OVER THIS MATTER.

Blockware's arguments concerning jurisdiction are puzzling and fail to raise any "serious jurisdictional issue." *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) (internal quotations omitted). As Blockware notes, "In ruling on a motion under Rule 12(b)(1), the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

In this case, the Complaint states:

> This court has diversity jurisdiction over the subject matter of counts one, two, and four under 28 U.S.C. § 1332(a), in that this is a civil action between a corporation based in the United Kingdom and a corporation headquartered in Illinois, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Compl. ¶3. Blockware does not dispute that the amount in controversy exceeds $75,000 or that Faes & Company (London) Limited is a foreign corporation registered in the United Kingdom.

Rather, Blockware's argument is that the Services Agreement was signed by "Faes & Co.," which is allegedly ambiguous, in that Mr. Christian Faes also owns and controls, "Faes & Co US CORP" and "Faes & Co Digital Mining, Inc.," which have paid some monthly hosting fees to Blockware. Blockware does not cite a case where payment of an invoice by a third-party or related company is sufficient to remove a party from a contractual relationship. The fact that one's mom or significant other may have paid rent on occasion does not alter who the contracted party is.

In any event, the Services Agreement was signed by Christian Faes for "Faes & Co" on October 25, 2021, the same time frame when Mr. Faes was negotiating the terms of the hosting agreement with Mr. Jappa. Compl. Ex. C. However, the Delaware entities Faes & Co US CORP and Faes & Co Digital Mining, Inc. were not incorporated until December 15, 2021 and April 26, 2022, respectively. Engle Decl. Exs. A and B. That is, Faes & Co US CORP and Faes & Co Digital Mining, Inc. did not exist at the time the Services Agreement and hosting agreement were entered into and could not have been party to them.

Additionally, Mr. Faes notes in his correspondence with Mr. Jappa that:

For invoicing, can this please be made out to:
Faes & Company (London) Limited
Two Fitzroy Place, 8 Mortimer Street, London W1T 3JJ

Compl. Ex. C at 19. Blockware then sent an invoice for $525,000 to "Faes & Company (London) Limited," which was duly paid. Engle Decl. Ex C.

Thus, despite the insinuations in Blockware's motion to dismiss, there is no ambiguity that Faes & Company (London) Limited is the proper party and that diversity jurisdiction exists in this

6

matter.

## II. THE COLOCATION FACILITY SERVICES AGREEMENT DOES NOT APPLY HERE AND FAES DID NOT AGREE TO ARBITRATE

As discussed above, Faes expressly objected to and did not sign the draft Colocation Facility Services Agreement that Blockware seeks to assert in this matter. Nothing in the Complaint alleges, invokes, or incorporates by reference the Colocation Agreement—it is simply not relevant to the parties' dispute other than as a contract Blockware apparently wishes Faes would have agreed to.

Nevertheless, Blockware seeks to bootstrap the fact that a draft version of the Colocation Agreement was emailed to Faes as a basis to enforce its terms. This is a bridge too far, particularly in the context of a motion for improper venue brought under Rule 12(b)(3). To the extent Blockware seeks to assert the applicability of an unsigned draft contract Faes rejected to compel arbitration, Blockware can file a motion to compel arbitration under the Federal Arbitration Act, 9 U.S. Code § 4, and present facts and evidence in support of its allegation that the Colocation Agreement was agreed to by Faes.

In fact, while Blockware cites precedent that an effort to compel arbitration can be asserted via Rule 12(b)(3), other authorities disagree. The recent *Lukis v. Whitepages Incorporated*, 549 F.Supp.3d 798 (N.D. Ill. 2021), analyzes the question in some detail. It notes that while it was thought FRCP 12(b)(3) could be an appropriate vehicle to compel arbitration when arbitration would be conducted outside the district where the court resides, such a position was called into question by the Supreme Court's decision in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013). *Lukis* at 806-07. In particular, the *Lukis* court notes that:

> But *Atlantic Marine* made clear that only federal venue laws, and not contractual forum selection clauses, govern whether venue is proper in a particular district:

7

> 'Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." 571 U.S. at 55, 134 S.Ct. 568. *Atlantic Marine* thus casts substantial doubt on decisions, like *Faulkenberg*, that are premised on the notion that arbitration and forum selection clauses affect the propriety of venue and thus fall within the writ of Rule 12(b)(3) and 28 U.S.C. § 1406(a). *Cf. Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 890 (7th Cir. 2020) (rejecting a party's argument that a motion invoking an arbitration provision must be brought under Rule 12(b)(3), and holding that the 'motion to compel arbitration was in substance a motion under § 4 of the FAA,' though the arbitration agreement did not indicate any arbitral locale).

*Id*. If Blockware believes that evidence supports its contention that its Colocation Agreement constitutes a "enforceable written agreement to arbitrate" agreed to by Faes, it can seek relief under the Federal Arbitration Act.

To the extent the Court could potentially regard Blockware's 12(b)(3) motion as a motion to compel arbitration arising under the FAA, "[t]he party seeking to compel arbitration, must prove the existence of a valid agreement by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). "To determine whether such an agreement exists, 'federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Id*. (citations omitted). In determining whether a valid agreement to arbitrate exists, "the liberal federal policy regarding the scope of arbitrable issues is inapposite" to the question whether a particular party agreed to the arbitration agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). Rather, the validity of an arbitration agreement remains "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

With regard to procedures applicable under the Federal Arbitration Act:

> In deciding whether an agreement to arbitrate existed, a court should apply a summary-judgment-style standard. 'Only when there is no genuine issue of fact

8

>concerning the formation of the agreement' should the court decide as a matter of law that an agreement to arbitrate existed. The district court should give the party opposing a motion to compel arbitration 'the benefit of all reasonable doubts and inferences that may arise.'

*Card v. Wells Fargo Bank, N.A.*, 2020 WL 1244859 at *2 (D. Or. Mar. 16, 2020) (citations omitted).

In the instant case, Faes did not only not sign the draft Colocation Agreement sent by Blockware but instead expressly repudiated its terms. Compl. Ex. C at 19. Blockware accepted Faes' rejection by performing, if inadequately, the agreement actually negotiated between the parties. If Blockware did not wish to accept Faes' business without Faes' assent to the Colocation Agreement, Blockware could have required Faes' signature and refused to accept Faes' $525,000. The parties' later course of dealing suggests merely that they had reached a contractual agreement regarding the essential terms of the hosting relationship (location, duration, monthly fee, cost of energy) based on their negotiations, not that Faes somehow implicitly adopted the draft Colocation Agreement it had rejected.

### III. THE COMPLAINT SUFFICIENTLY STATES EACH OF ITS CLAIMS AND IS NOT SUBJECT TO DISMISSAL

A complaint is sufficient to survive a motion to dismiss under F.R.C.P 12(b)(6) when it states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility requires facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009). The Court "accept[s] as true all well-pleaded facts alleged, and draw[s] all possible inferences in [the plaintiffs'] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

On a motion to dismiss, the court reviews the four corners of a complaint, with limited exceptions. See F.R.C.P. 12(d). When moving under Rule 12(b)(6), a motion can be based "only on the complaint itself, documents attached to the complaint, documents that are critical to the

9

complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

In this case, Faes has filed a detailed 20-page complaint with 10 exhibits amounting to 60 pages that describe or constitute the offers, negotiations, agreements, and breaches that have taken place. There is no question as to the nature or bases of Faes' allegations, that Blockware induced Faes into an agreement for Blockware to host Faes' bitcoin miners on the basis of false representations, including Blockware's ownership of the hosting facility, the price and availability of electricity, and "industry leading uptime" of miners hosted by Blockware. *See generally* Complaint ¶¶19-34.

### A. Faes' Complaint States a Claim for Breach of Contract

Like its argument regarding arbitration, Blockware's contention that Faes fails to state a claim for breach of contract depends largely on treating the rejected draft Colocation Agreement as the contract the parties negotiated, agreed to, and, at least in part, preformed. Blockware also argues that particular provisions of the Colocation Agreement and Services Agreement, such as *force majeure* and limitation of liability clauses, effectively bar Faes' contract claims, rendering them subject to dismissal. However, contentions about the enforceability, much less the specific effect, of limitations of liability and *force majeure* clauses are inherently fact-based, likely to be strongly contested in this action, and are not properly at issue in a motion to dismiss. Indeed, Blockware does not even clearly specify what the alleged *force majeure* is. To the extent it is a increase in inflation or higher than expected costs or energy prices, such items were entirely foreseeable. As the Complaint notes, "While an increases in energy costs may be an unfavorable development for a party that contracts to provide energy at a fixed rate, it does not constitute a *force majeure* under any standard interpretation of the doctrine." Complaint ¶30.

Blockware refers to the hosting agreement negotiated between the parties as "oral" and criticizes it on that basis. However, as detailed at length in the Complaint and related exhibits, the nature and essential terms of the parties' hosting agreement were negotiated in writing over email. It is not an oral contract. Further, a contract need not be an elaborate production. Under Illinois law, the elements necessary for a valid contract are: (1) an offer, (2) an acceptance, (3) consideration, (4) ascertainable material terms, and (5) intent to be bound and mutual assent. *DiLorenzo v. Valve & Primer Corp.*, 347 Ill.App.3d 194 199-200 (2004). In appropriate circumstances a few hand gestures and nods of the head can be sufficient to form an enforceable contract. In any event, the material terms of the hosting agreement discussed in the Complaint and exhibits thereto are clear, definite, and enforceable.

### B. Faes' Complaint States a Claim for Negligence

Blockware argues that it cannot be liable for negligence toward Faes because it had no duties independent of contract toward Faes. However, as alleged and detailed in the Complaint, by agreeing to procure miners for Faes and host them at its facility for Faes' benefit, Blockware entered into an agent-principal relationship with Faes. In exchange for payment, Blockware would take custody of, house, and operate Faes miners for Faes. This is sufficient to create a principal-agent relationship, which gives rise to a number of legal duties. As detailed in the body of the Complaint and paragraphs 44-47, as Faes' agent Blockware accepted and breached "at least its duties of care, diligence, skill, and disclosure with respect to Faes." Compl. ¶47. Blockware was negligent in failing to uphold the duties it owed to Faes.

A recent Seventh Circuit case addresses agency at length in connection with vicarious liability in the context of a motion to dismiss. In *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021), the court reversed the district court's dismissal of a vicarious liability claim based on

11

agency, noting that "[W]hether an agency relationship exists is ultimately a question of fact. *See United States v. Dish Network L.L.C.*, 954 F.3d 970, 975 (7th Cir. 2020). Bilek need not prove his claims at the pleading stage, and we need not resolve the bounds of Bilek's agency claims here. We decide only that Bilek alleges a plausible claim for relief."

Additionally, with regard to Faes' negligence claim, this case clearly involves disputes over the contractual arrangements between the parties, and it is likely Blockware will plead various defenses to Faes' contract claims. Partly in anticipation of these defenses, Faes has pled negligence as an alternative basis for recovery. This is permissible, as "A party may state as many separate claims or defenses as it has, regardless of consistency." F.R.C.P. 8(d)(3). To the extent Faes prevails on its breach of contract claims, it may be partly barred from recovery based on negligence. Any such concerns can be addressed at the appropriate time, but it would be premature to determine that issue in the present context.

Finally, Faes' claim for negligence does not arise only from the minimum requirement of reasonable performance implied in every contract, but from the more exacting duties of loyalty, faithfulness, and full disclosure required of an agent. An agent can be negligent in breaching duties owed to its principal even if its efforts would otherwise be sufficient under an arms-length agreement.

### C. Faes' Complaint Adequately States a Claim for Fraud

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Faes' fraud claim is plead in detail and places Blockware on specific notice of the nature and details of the claims against it.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."

*Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Multiple pages of Faes' Complaint are devoted to the facts underlying its fraud claim, which is based on both Blockware's express misrepresentations and concealment of material information. This fraud is further detailed in exhibits C through F, where Blockware and Mr. Jappa made misrepresentation about Blockware's ownership of its alleged Pennsylvania hosting facility, the reliability of power supplied to its alleged facility, and false reports of uptime for customers' miners. See, e.g., Complaint ¶53. Faes' fraud claim is based on specific acts communications made by identified individuals, such as Mr. Jappa, Blockware's CEO, at identified times. No more is required to adequately plead fraud under the standard of Rule 9.

While Faes disputes that any of its claims are subject to dismissal for failure to state a claim, to the extent the Court determines otherwise, Faes requests leave to amend consistent with FRCP 15(a)(2).

### IV. CONCLUSION

For all of the above reasons, Faes respectfully requests that the Court deny Blockware's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), motion to compel

///
///
///

13

arbitration under Rules 12(b)(3), and motion to dismiss under Rule 12(b)(6).

Dated:  February 13, 2023         Respectfully submitted,

By:  */s/ Alan E. Engle*
Alan E. Engle
(admitted *pro hac vice*)
(CA Bar No. 224779)
Meador & Engle
1115 Seal Way
Seal Beach, CA 90740
(310) 428-6985
alan.engle@meenlegal.com

Wesley E. Johnson
(Ill. Bar No. 6225257)
Goodman Tovrov Hardy & Johnson LLC
105 W. Madison, Ste. 1500
Chicago, IL 60602
(312) 752-4828
wjohnson@goodtov.com

Attorneys for Plaintiff
Faes & Company (London) Limited

14