**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FAES & COMPANY (LONDON) LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>BLOCKWARE SOLUTIONS LLC<br><br>    Defendant. | Civil Action No. 22-cv-7121<br><br>Judge:    Hon. Virginia M. Kendall |

**DEFENDANT BLOCKWARE SOLUTIONS LLC'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

    I.    PLAINTIFF HAS NOT ADEQUATELY PLED THAT IT IS THE COUNTERPARTY TO THE CONTRACTS AT ISSUE. .....................................2

    II.    PLAINTIFF CANNOT ESCAPE THE TERMS OF THE CO-LOCATION AGREEMENT, WHICH IS VALID AND ENFORCEABLE. ...............................3

        A.    THE CO-LOCATION AGREEMENT IS PROPERLY CONSIDERED BY THIS COURT IN SUPPORT OF BLOCKWARE'S MOTION TO DISMISS.................................................3

        B.    THE CO-LOCATION AGREEMENT IS VALID AND ENFORCEABLE. ........................................................................................4

    III.    VENUE IS IMPROPER BECAUSE THE CO-LOCATION AGREEMENT CONTAINS A VALID AND ENFORCEABLE ARBITRATION CLAUSE. .....................................................................................................7

    IV.    THE COMPLAINT SHOULD BE DISMISSED ON THE MERITS BECAUSE IT FAILS TO STATE A CLAIM. ...........................................................8

        A.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT. ................................................................................................8

        B.    PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE. ............8

        C.    PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD.........................9

        D.    PLAINTIFF HAS ABANDONED ITS CLAIM FOR RELIEF UNDER THE DTPA.................................................................................10

CONCLUSION..............................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apex Digit., Inc. v. Sears, Roebuck & Co.*,
  572 F.3d 440 (7th Cir. 2009) ..................................................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................6

*Bauer v. Qwest Commc'ns Co., LLC*,
  743 F.3d 221 (7th Cir. 2014) ..................................................................................................6

*Beanstalk Grp., Inc. v. AM Gen. Corp.*,
  283 F.3d 856 (7th Cir. 2002) ..................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................6

*Bilek v. Fed. Ins. Co.*,
  8 F.4th 581 (7th Cir. 2021) .....................................................................................................9

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010) ................................................................................................10

*Bower v. Jones*,
  978 F.2d 1004 (7th Cir. 1992) ................................................................................................9

*Constr. Aggregates Corp. v. Hewitt-Robins, Inc.*,
  404 F.2d 505 (7th Cir. 1968) ..................................................................................................6

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*,
  417 F.3d 727 (7th Cir. 2005) ..................................................................................................7

*Corner v. Walsh*,
  No. 21 CV 2867, 2022 WL 507567 (N.D. Ill. Feb. 18, 2022)................................................3

*Forrest v. Universal Sav. Bank, F.A.*,
  507 F.3d 540 (7th Cir. 2007) ..................................................................................................6

*Halim v. Great Gatsby's Auction Gallery, Inc.*,
  516 F.3d 557 (7th Cir. 2008) ..................................................................................................8

*Johnson v. Orkin*, LLC,
  556 F. App'x 543 (7th Cir. 2014)...........................................................................................7

*Landmark Props., Inc. v. Architects Int'l–Chi.*,
    526 N.E.2d 603 (Ill. App. Ct. 1988) ...........................................................................5, 6

*Lynge v. Kunstmann*,
    418 N.E.2d 1140 (Ill. App. Ct. 1981) ................................................................................5

*Ragan v. AT & T Corp.*,
    824 N.E.2d 1183 (Ill. App. Ct. 2005) ................................................................................6

*Tierney v. Vahle*,
    304 F.3d 734 (7th Cir. 2002) .............................................................................................4

*W. Bend Mut. Ins. Co. v. Schumacher*,
    844 F.3d 670 (7th Cir. 2016) .............................................................................................6

*Woodard v. Am. Fam. Mut. Ins. Co.*,
    950 F. Supp. 1382 (N.D. Ill. 1997) ....................................................................................9

**Statutes**

28 U.S.C. 1332(a) ..........................................................................................................................2

Delaware's Deceptive Trade Practices Act..................................................................................10

Federal Arbitration Act, 9 U.S.C. § 4 ............................................................................................2

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................................................9

Fed. R. Civ. P. 10(c) ...................................................................................................................3, 4

Fed. R. Civ. P. 12(b)(1)..............................................................................................................1, 2

Fed. R. Civ. P. 12(b)(3)..............................................................................................................2, 7

Fed. R. Civ. P. 12(b)(6)..................................................................................................................2

Defendant Blockware Solutions LLC ("Blockware") respectfully submits this reply memorandum in further support of its motion to dismiss ("Motion" or "Mot.") the complaint (the "Complaint") brought by Faes & Company (London) Limited ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff's Opposition[1] confirms its transparent strategy of disavowing the explicit contractual terms that govern its principal Christian Faes's ("Faes") business relationship with Blockware in an attempt to shift the risk of loss in the face of the current crypto market headwinds. But Plaintiff cannot avoid the terms of a bargain that Faes struck with Blockware—including the limitations on liability and other disclaimers contained within the Co-Location Agreement—that render the relief sought in its Complaint implausible and unreasonable. Regardless of how Plaintiff chooses to frame its causes of action, it cannot avoid the realities of the contract, and the Complaint should therefore be dismissed.

First, Plaintiff's Opposition fails to eliminate the uncertainty as to whether Faes & Co (London) Limited was a party to the relevant agreements, and therefore a proper party to this lawsuit. As a result, Plaintiff has not met its burden of establishing diversity jurisdiction, and the Complaint should be dismissed pursuant to Rule 12(b)(1).

Second, Plaintiff's attempts to disclaim the applicability of Blockware's Co-Location Agreement are meritless, and directly contradicted by the exhibits annexed to its own Complaint. It is appropriate for this Court to consider the substance of the Co-Location Agreement when evaluating Plaintiff's claims under the "incorporation-by-reference" doctrine, to prevent Plaintiff from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents that refute its claims.

---

[1] Plaintiff's Opposition To Blockware's Motion To Dismiss The Complaint is referred to herein as "Opposition" and cited to as "Opp."

Third, because the Co-Location Agreement is valid and enforceable, this dispute is subject to arbitration before the American Arbitration Association ("AAA"). As a result, the Complaint should similarly be dismissed under Rule 12(b)(3). Alternatively, Blockware reserves the right to seek to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 4.

Fourth, Plaintiff's Complaint otherwise fails to state a claim, and this Court should also dismiss it under Rule 12(b)(6).

Accordingly, as further set forth below, and for the reasons cited in Blockware's opening Motion, Plaintiff's Complaint must be dismissed in its entirety.

## ARGUMENT

### I. PLAINTIFF HAS NOT ADEQUATELY PLED THAT IT IS THE COUNTERPARTY TO THE CONTRACTS AT ISSUE.

The Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiff's Opposition fails to resolve a serious jurisdictional issue; namely, Plaintiff has not sufficiently pled that Faes & Co (London) Limited is the actual counterparty to the agreements at issue here, which serves as the basis for Plaintiff's assertion of diversity jurisdiction under 28 U.S.C. 1332(a). Even drawing "reasonable inferences" in Plaintiff's favor, the existing record is at best ambiguous: (i) the contracting party for the Services Agreement was "Faes & Co" (Compl. Ex. A)); (ii) the invoice under the Services Agreement was sent to "Faes & Co (London) Limited" (Opp. Ex. C); (iii) the Co-Location Agreement was allegedly never signed (Compl. ¶18); (iv) Plaintiff alleges that an informal agreement for colocation services was developed by email between Blockware and Faes (Opp. at 8-9), with instructions to bill to "Faes & Co (London) Limited" (Opp. at 6); (v) but the invoices for colocation services were then paid by "Faes & Co US CORP" and "Faes & Co Digital Mining, Inc" (Mot. at 5); and (vi) the mining

equipment was later returned to "Faes & Co" in Fort Pierce, Florida (Mot. at 5 n.2, 7).[2] Plaintiff has therefore not met its burden of competently proving there is diversity jurisdiction based upon the UK citizenship of a party.

## II. PLAINTIFF CANNOT ESCAPE THE TERMS OF THE CO-LOCATION AGREEMENT, WHICH IS VALID AND ENFORCEABLE.

### A. The Co-Location Agreement is Properly Considered by this Court in Support of Blockware's Motion to Dismiss.

The Co-Location Agreement annexed to Blockware's Motion to Dismiss is properly before this Court, along with the other exhibits filed with Plaintiff's Complaint. Plaintiff's suggestion that Blockware's reliance on these documents somehow converts this to a motion for summary judgment (Opp. at 2) is without merit.

First, because the Services Agreement (Compl. Ex A) and email communications (Compl. Ex. C) were attached to the Complaint, the documents become part of the Complaint for all purposes, Fed. R. Civ. P. 10(c), and so the Court can consider these documents in deciding the motion to dismiss without having to convert the motion to one for summary judgment. *See, e.g.*, *Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 858 (7th Cir. 2002).

Second, in the case of Co-Location Agreement annexed to Blockware's Motion to Dismiss, this document is also properly before the Court under the incorporation-by-reference doctrine, since (1) it is referred to within the body of the Complaint (Compl. ¶18) and also Plaintiff's exhibits (Ex. C at 6/15); (2) it is authentic;[3] (3) it is central to Plaintiff's claim (Mot. at

---

[2] Contrary to Plaintiff's suggestion (Opp. 5-6), extra-contractual facts are properly considered in the context of a jurisdictional motion. *See Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009) ("[T]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter exists.") (internal quotation omitted).

[3] The Court can consider the fact that Plaintiff has not challenged the authenticity of the documents in determining that it is appropriate to consider it. *Corner v. Walsh*, No. 21 CV 2867, 2022 WL 507567, at *2 (N.D. Ill. Feb. 18, 2022).

10); and (4) it is possible to be interpreted without further discovery. *Corner*, 2022 WL 507567, at *2.

Rather than an attempt by Blockware to "bootstrap" the Co-Location Agreement into this dispute, the incorporation-by-reference doctrine is necessary here to prevent Plaintiff from using the agreement as both a sword and a shield. Indeed, the present case is a quintessential example of where consideration of such material is appropriate, since Plaintiff attempts to disclaim this agreement as "not relevant" to the parties' dispute, but the Co-Location Agreement instead shows that the plaintiff is entitled to no relief. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

**B. The Co-Location Agreement is Valid and Enforceable.**

While Plaintiff vigorously seeks to avoid the application of the Co-Location Agreement (because its terms are fatal to Plaintiff's claims), Plaintiff has failed to plausibly plead that it "expressly repudiated" the Agreement (Opp. at 9), or that the parties somehow arrived at an alternative email agreement concerning the terms of the hosting relationship, including "location, duration, monthly fee [and] cost of energy." *Id.* To the contrary, it is plain from the exhibits attached to Plaintiff's own Complaint—which are part of the Complaint for all purposes, *see* Fed. R. Civ. P. 10(c)—that Plaintiff in no way repudiated the Co-Location Agreement, but instead did not object to, and therefore tacitly agreed to, all of its essential terms. In particular:

- On October 15, in the context of the parties' business discussions, Faes asked for the "Terms of Service contract for all this." Ex. C at 4/15.

- In response to the request for the "Terms of Service," Mason Jappa ("Jappa") of Blockware provided a copy of the Services Agreement and the Co-Location Agreement. *Id.*

- On October 18, Faes then responded with questions about particular terms within both documents. With respect to the Co-Location Agreement in particular, Faes raised three discrete issues regarding the Agreement's terms (1) whether he would be required to use Blockware's pools under the Co-Location Agreement; (2) what the fees would be for Blockware's pool; and (3) whether clause 7.10 within the Agreement regarding "Development" of intellectual property would apply to Faes' own intellectual property,

-4-

> which he specified that he "could not agree to" and stated, "I assume that [t]his clause can be struck out." *See* Ex. C at 6/15; Opp. at 4.

- Jappa responded that same day, (1) clarifying that Faes would be required to use Blockware's pools; (2) specifying the fee of 2% FPPS; and (3) explaining that the "Development" provision at clause 7.10 would not apply to Faes' intellectual property, only Blockware's (i.e., there was no cause for concern about Faes' intellectual property under that clause). Ex. C at 6/15.

- Faes did not thereafter "repudiate" the contract. In fact, as evidenced by Exhibit C to Plaintiff's own Complaint, Faes said nothing further about those provisions—or any other provisions—of the Co-Location Agreement. *See generally* Ex. C. He instead asked a few more questions about the pricing of the individual bitcoin mining machines and then stated "I will go for January delivery." Ex. C. at 7/15.

Once the miners were delivered to the Pennsylvania facility, Faes then proceeded to perform under the terms of the Co-Location Agreement by paying the setup costs, first and final months' deposit, and monthly service fees contemplated thereunder. *See* Mot. at 5. Thus, Plaintiff has not plausibly alleged an "express[] repudiation" of the Co-Location Agreement, and the exhibits to its Complaint also completely undermine that claim. *See generally* Compl. Ex. C.

Under Illinois law, "a signature is not always essential to the binding force of an agreement;" assent may be demonstrated by other acts or conduct of the parties. *Lynge v. Kunstmann,* 418 N.E.2d 1140, 1144 (Ill. App. Ct. 1981). Indeed, "[i]t is well settled that a party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it." *Landmark Props., Inc. v. Architects Int'l–Chi.*, 526 N.E.2d 603, 606 (Ill. App. Ct. 1988).[4] Here, Plaintiff does not deny the weight of this cited authority—and, in fact, fails to address the cases cited in Blockware's opening memorandum at all. *See* Mot. at 8. Plaintiff instead argues that it "expressly repudiated" the terms of the Co-Location Agreement, and therefore "the parties' later course of dealings" suggested that

---

[4] *See also Amelco Elec. Co.*, 351 N.E.2d 349, 354 (Ill. App. Ct. 1976) (holding that although the subcontractor did not sign the agreement, the subcontractor became bound by its acts and conduct to the subcontract's provisions).

they had reached an agreement of the essential terms over email. Opp. at 9. But Exhibit C to Plaintiff's Complaint completely belies these allegations, which are therefore not afforded an assumption of truth. *See Twin City Fire Ins. Co. v. L. Off. of John S. Xydakis, P.C.*, 407 F. Supp. 3d 771, 775 (N.D. Ill. 2019) ("To the extent an exhibit contradicts the complaint's allegations, the exhibit takes precedence.") (citing *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (A plaintiff's claim for relief must be "plausible on its face."); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (Mere legal conclusions "are not entitled to the assumption of truth.").

At best, Plaintiff's exhibits support the allegation that Plaintiff objected to *one term* within the Co-Location Agreement, while conceding that the allegedly offending term could probably "be struck out" if required. *See* Ex. C at 6/15; Opp. at 4. Notably, Plaintiff did not object to—let alone repudiate—any other essential terms of the Co-Location Agreement that are now at issue, including (i) the limitation of warranties (Mot. at 3-4); (ii) the disclaimer of liability for factors outside of Blockware's control (Mot. at 4); (iii) the limitation of liability provision (*id.*); (iv) the integration clause (*id.*) and/or (v) the arbitration clause (Mot. at 8.). A parties' failure to object to any other terms is evidence of its assent to be bound by these remaining terms. *Landmark Props.*, 526 N.E.2d at 606–07; *see also Constr. Aggregates Corp. v. Hewitt-Robins, Inc.*, 404 F.2d 505, 510 (7th Cir. 1968) (plaintiff's request to change the payment terms of the defendant's offer, without objection to the offer's other terms, constituted a counteroffer that included the remaining terms).[5]

---

[5] Put another way, "[s]ilence may be construed as acceptance where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept." *Bauer v. Qwest Commc'ns Co., LLC*, 743 F.3d 221, 228 (7th Cir. 2014)(internal quotation omitted); *Ragan v. AT & T Corp.*, 824 N.E.2d 1183, 1188–89 (Ill. App. Ct. 2005)(holding plaintiffs' silence and inaction upon receipt of mailed agreement for telephone services, and their use of those services, constituted acceptance of arbitration clause within agreement).

Under the facts as presented in Plaintiff's Complaint and the annexed exhibits, Plaintiff has not plausibly alleged that Faes repudiated the Co-Location Agreement, and therefore Faes' failure to sign the agreement does not undermine its enforceability. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) ("[T]he plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.")

### III. VENUE IS IMPROPER BECAUSE THE CO-LOCATION AGREEMENT CONTAINS A VALID AND ENFORCEABLE ARBITRATION CLAUSE.

The Court should dismiss this Complaint under Federal Rule 12(b)(3) because the Co-Location Agreement contains an arbitration clause that is valid and enforceable against Plaintiff's claims, which all arise out of alleged failures of Blockware's servicing of Plaintiff's bitcoin miners. (Mot. at 8.) For the reasons stated above, the Co-Location Agreement is a valid and enforceable contract, and if Plaintiff wished to exclude the arbitration clause from the parties' agreement, it should have further inquired about the clause, explicitly disclaimed the clause, or otherwise refused to perform under the contract until the term was clarified.

In its opening Motion, Blockware provided ample support for its position that a party can be bound to an arbitration clause, even if it did not sign the underlying agreement. Mot. at 8. Rather than responding to such arguments with case law—or addressing Blockware's cited cases—Plaintiff instead challenges the appropriateness of Rule 12(b)(3) as a vehicle to enforce the arbitration provision. Opp. at 7–9. Courts within the Seventh Circuit have found that a motion to dismiss based on a contractual arbitration clause is appropriately "conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3)." *See, e.g.*, *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544–45 (7th Cir. 2014) ("[A] motion seeking dismissal based on an agreement to arbitrate . . . should be decided under Rule 12(b)(3).") (citations omitted); *see also*

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) (dismissing cases under 12(b)(1) where there is an arbitration clause "makes eminent sense in terms of … precedent.") If this Court determines, however, that Blockware's challenge is more appropriately brought as a Motion to Compel Arbitration, Blockware expressly reserves the right to bring such a motion.[6]

## IV. THE COMPLAINT SHOULD BE DISMISSED ON THE MERITS BECAUSE IT FAILS TO STATE A CLAIM.

### A. Plaintiff Fails to State a Claim for Breach of Contract.

As explained in detail in its opening Motion, Blockware's alleged contractual breaches are expressly disclaimed by explicit provisions of either the Services Agreement or the Co-Location Agreement. Mot. at 10-12. In its Opposition, Plaintiff tellingly does not engage with Blockware's responses to the majority of the breach allegations, but instead conveniently rests on its position that the Co-Location Agreement is not valid or enforceable. Opp. at 10–11. Plaintiff's position—although unsupported by its own exhibits—makes sense as a matter of strategy, as the Co-Location Agreement is fatal to Plaintiff's theories of liability, as well as the categories of damages that Plaintiff seeks. Mot. at 10-12. This Court should reject Plaintiff's attempts to rewrite its business arrangements with the benefit of hindsight, and instead honor the parties' agreement to limit the liability and damages here, which makes Plaintiff's claims for relief subject to dismissal for failure to state a plausible claim.

### B. Plaintiff Fails to State a Claim for Negligence.

Plaintiff's defense of its negligence claim once again rests upon the premise that the Co-Location Agreement is not a valid and enforceable contract—a position that allows Plaintiff to pick and choose the benefits of its business relationship with Blockware, while depriving Blockware of the protections built into that agreement that limited its warranties and liabilities to

---

[6] *See Halim v. Great Gatsby's Auction Gallery, Inc.,* 516 F.3d 557, 562 (7th Cir. 2008) ("A party does not waive its right to arbitrate a dispute by filing a motion to dismiss or a motion to transfer venue.")

-8-

Plaintiff. Mot. at 12. But Plaintiff still fails to establish that Blockware owed any duty to it, beyond the rights and obligations expressly outlined in those contracts. Whether a duty exists is a question of law appropriate for resolution on a motion to dismiss, and Plaintiff has wholly failed to establish the existence of such a duty beyond conclusory allegations, which this Court need not accept. *Woodard v. Am. Fam. Mut. Ins. Co.*, 950 F. Supp. 1382, 1389 (N.D. Ill. 1997).[7] Plaintiff's argument that the negligence claim should be preserved "as an alternative" (Opp. at 12) is without merit, as there is no reasonable dispute that there was an express contractual relationship between the parties, which imposed its own obligations and limitations.

### C. Plaintiff Fails to State a Claim for Fraud.

Finally, Plaintiff's Opposition does not address—let alone resolve—the failure of its pleadings to address an essential element of a fraud claim: that is "specific, objective manifestations of fraudulent intent." *See Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). Instead, its allegations of fraudulent intent are entirely conclusory. Mot. at 15. Similarly, the Complaint fails to plead how any of the alleged misrepresentations were actually "material" to the parties' business arrangement, beyond reciting the element of its cause of action. Compl. ¶¶54, 55. Further, the misrepresentations alleged are plainly duplicative of Plaintiff's breach of contract claims, and should therefore be dismissed on that independent basis. Mot. at 14-15. Finally, the claimed damages that Plaintiff seeks through its fraud claims are expressly disclaimed by the parties' contract. Mot. at 11.

---

[7] Plaintiff's reliance on *Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021), does not command a different result. In *Bilek,* at issue was whether the Federal Insurance Company could be held vicariously liable under various theories of agency for its lead generators' unauthorized robocalls. *Id.* at 587. The court found that Bilek need not *prove* his theory of vicarious liability for the purposes of 12(b)(6), because his allegations included enough detail to "render his actual authority of agency liability plausible." *Id.* Here, Plaintiff has failed to plausibly allege that any such a duty is owed, and therefore the holding in *Bilek*—a case with facts that are otherwise wholly inapposite—is not controlling.

For all of the reasons described in Blockware's Motion, Plaintiff's allegations therefore fall well short of the pleading requirement of Rule 9(b) and should be dismissed.

### D. Plaintiff Has Abandoned Its Claim for Relief Under the DTPA.

Finally, Plaintiff's Opposition offers no response to Blockware's arguments to dismiss Plaintiff's claim under the Delaware Deceptive Trade Practices Act ("DTPA"). Plaintiff has therefore waived any argument with regard to its DTPA claim and this Court should dismiss that claim on the merits. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.).

### CONCLUSION

For all of these reasons, this Court should dismiss Plaintiff's Complaint for lack of jurisdiction, improper venue, and on the merits for failure to state a claim.

Dated: February 21, 2023                    Respectfully submitted,

*/s/ Meghan Spillane*
Meghan K. Spillane (*pro hac vice*)
Catherine A. Tremble (*pro hac vice*)
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
mspillane@goodwinlaw.com
ctremble@goodwinlaw.com

*/s/ Alan M. Ritchie*
Anna-Katrina S. Christakis
Alan M. Ritchie
**Pilgrim Christakis LLP**
One South Dearborn Street, Suite 1420
Chicago, Illinois 60603
Ph. (312) 924-1773
kchristakis@pilgrimchristakis.com
aritchie@pilgrimchristakis.com

*Attorneys for Blockware Solutions LLC*

## CERTIFICATE OF SERVICE

I, Meghan K. Spillane, an attorney, hereby certify that, on February 21, 2023, I caused the foregoing to be electronically filed via the Court's CM/ECF system, which effected service on all counsel of record.

*/s/ Meghan K. Spillane*
Meghan K. Spillane